W. M. WICKS, et al., v. SOLOMON SMITH, et al.

1. EJECTMENT; *Defense; General Denial; Proof.* In action for the recovery of real property, it is sufficient in the defendant to deny generally the title alleged in the petition; and under such a denial, he may prove any fact tending to show that plaintiff has not the title, or the right of possession.

2. ———— *Setting Out Facts.* While a general denial is sufficient, the defendant may, if he prefer, set out fully and specifically the facts constituting his defense, and then his answer is to be governed by the ordinary rules of pleadings.

3. OFFER OF TESTIMONY; *Relevancy; Duty of Court.* Where evidence offered is *prima facie* irrelevant, the court may require the party offering it to show its relevancy by connecting it with other facts, and upon his failure to do this, properly reject it; but where it is pertinent, though insufficient, it should as a rule be received.

4. ――――― *Testimony; Pleadings.* To determine the pertinency and relevancy of testimony offered, reference must be had to the pleadings; and while these are no longer, except in special cases, required to be verified, they are still the professional statements of counsel of the claims of their clients, and the matter they expect to prove.

### *Error from Woodson District Court.*

EJECTMENT, for the N.E. ¼ of the S.E. ¼ of section 18, and a fifteen-acre tract of timber land lying in section 8, in township 19, range 12, in Lyon county, brought by *Solomon Smith* and *Julia Smith* as plaintiffs, against *W. M. Wicks* and *Harrison Mays.* The action was commenced in Lyon district court, and afterward the place of trial was duly changed to Woodson county, where the case was tried at the June Term 1875. Plaintiffs claimed as owners in fee simple, and on the trial showed a regular chain of title from the government to themselves. The defendants were in possession, and they claimed as owners under a contract of purchase. from plaintiffs, made by one Blankenship. The particulars of defendants' title, and the proceedings on the trial, are fully stated in the opinion, *infra.* The district court gave judgment in favor of the plaintiffs for the recovery of the lands, and for $100 damages for use and occupation. Defendant *Mays* died before trial, and the action as to him was revived in the name of his widow and children, and *Wicks* and the heirs of *Mays* now bring the case here on error.

*John V. Sanders,* for plaintiffs in error, contended, that the court erred in refusing to permit defendants to prove the facts they offered to prove by the witness Smith. The second defense stated facts sufficient to take the contract out of the statute of frauds. (*Gregg v. Hamilton,* 12 Kas. 333; *Edwards v. Fry,* 9 Kas. 417; *Galbraith v. Galbraith* 5 Kas. 402.) These cases show that if our second defense was true we could have

brought suit and compelled the plaintiffs to execute to us a warranty deed to the premises; and an equitable title which is not strong enough to enforce specific performance, may be a good defense in ejectment when the defendant is in possession. (*Courtney v. Woodworth,* 9 Kas. 443.) Defendants were not trespassers, and ejectment would not lie.

*Pinkerton & Lynn,* and *Ruggles & Sterry,* for defendants in error, maintained that there was no error in rejecting the testimony offered. The second defense set forth in the answer was good, for the reason that the law presumes that both of the sales and transfers therein stated, (first from Smith and wife to Blankenship, and second from Blankenship to Wicks and Mays) were in due form of law, and that there was some *note* or *memorandum* thereof in *writing*. This might be a good and sufficient warranty deed, from aught that appears in the allegations. "Where the plaintiff declares, as he might, at common law upon the agreement generally without stating whether it is in writing or not, it will be presumed to be in writing, and if the making of the agreement is denied, he is simply required to produce the memorandum in evidence at the trial or hearing." (Brown on Stat. of Frauds, § 505.) Now it nowhere appears in this second defense or in the answer that these sales were *not* in writing, hence the law presumed they were in writing, and oral evidence was not as good as the allegations. Then again, the defense alleges that Blankenship *paid the purchase price* to Smith, and that Wicks and Mays *paid Blankenship the purchase price;* but the offer of proof is not the payment of the purchase price by Blankenship to Smith, but an *agreement to pay;* the allegations are that Blankenship *paid* Smith divers hundred-acre tracts of *land* in Kentucky; but the offer of proof is, that he *agreed to pay* in *deeds,* not land, and no offer to show that Blankenship ever *paid* or offered to pay even in deeds, but only *agreements* — a poor compensation to Smith for his homestead. And again, the offer of proof is, that Smith and wife in consideration of said Blankenship's *performing* said several acts

on his part orally agreed to convey, etc. Now it was the *performing*, not an *agreement to perform*, which was the condition precedent to Smith's conveying.

There was no note or memorandum of any of these sales, as required by § 6, p. 505, Gen. Stat. 1868; and the question arises, ought the court to have admitted this evidence as proof of part performance such as would take the case out of the statute of frauds and perjuries? We don't suppose that there can be found a lawyer anywhere that will claim that the proof offered would be sufficient of itself to take the case out of the statute of frauds. The plaintiffs in error don't claim so much. They only claim that the evidence offered was some evidence on a vital link in the chain of testimony—for there was no offer to show that Blankenship ever paid Smith anything whatever for the land, and no offer to show Wicks and Mays ever paid anything whatever to Smith or Blankenship—no offer to show that either ever took possession except by receiving the key to the door—no offer to prove that either ever made any *improvements* whatever on the land—no offer to show that Blankenship was to perform his part at a *future time* by the terms of the agreement; but on the contrary, Blankenship's performance was a *condition precedent*, and the allegation of the answer is that he did *perform* at the time as agreed—showing it to have been a sale, if at all, for purchase-price down, and not a credit; then all we have here to work a man out of a valuable estate is *delivering over the key*. We don't want any stronger cases than those cited by plaintiffs in error, to show that this is no part performance; 12 Kas. 333; 9 Kas. 417; 5 Kas. 402. And in *McArthur v. Fry*, 10 Kas. 233, the court say: "Before the plaintiff would be entitled to the execution of the contract he must show that he has in all respects performed the stipulations on his part."

Again, we maintain that the defendants below were bound to make further offer of testimony to make their exception good. If they had gone forward and proved the facts offered, and stopped, the trial court would have struck it all

out for the reason that it is not such a part-performance as would take it out of the statute; and this court could not have said that the court below erred. When an objection is made to an improper question, then it is the duty of counsel propounding the question to show to the court by a statement or offer of proof how the question may become competent or relevant, as the case may be. Plaintiffs in error appreciated this fact in the court below, for when there the question was objected to they did not wait to have a ruling of the court, and exception, but made this offer then. The question called for *oral testimony*, and the offer of proof was *oral proof*, of facts which the statute of frauds required to be in *writing*, and the objection was well taken, unless the offer of proof showed some *exception* to the statute.

The opinion of the court was delivered by

BREWER, J.: This was an action of ejectment. The answer was, first, a general denial, and then certain equitable defenses. The second defense was, substantially, that in August 1871, Smith and wife sold the lands in question to one Noah M. Blankenship, and received of him the purchase price thereof, consisting of other lands and some personal property, (describing the same,) all of which said Blankenship conveyed to said Smith; and after said Smith and wife had sold said lands to Blankenship, and while they (the Smiths) were still in possession thereof, defendants, Wicks and Mays, bought said lands of Blankenship, and paid him the purchase price, and said Smith and wife, knowing of and acquiescing in the purchase of said real estate by said Wicks and Mays, voluntarily, and of their own accord, with the intention of carrying out both their own sale to Blankenship and Blankenship's sale to Wicks and Mays, delivered the possession of said lands to Wicks and Mays, which they still hold. The third defense supplemented the facts stated in the second, with an allegation that after plaintiffs, Smith and wife, had made their sale to Blankenship, and while defendants were negotiating with

*Statement of the case.*

Blankenship, one of them, the defendant Wicks, went to plaintiffs to ascertain whether Blankenship had any title or right to sell, giving the reason for the inquiry, and was told by plaintiffs that they had sold to Blankenship, and that if defendants purchased from him it would be all right, and that said defendants relied upon these statements, etc. The fourth defense added still further allegations of defendants' equitable title, but it is unnecessary to notice them.

Upon the trial plaintiffs proved a chain of title from the government, and rested. Then, as the record recites, the defendants put Solomon Smith, one of the plaintiffs below, on the stand as a witness, and after some preliminary questions, asked the following question: "State whether or not, you ever made any agreement with Noah M. Blankenship for the sale of the lands now in controversy?" To this question the plaintiffs below objected, on the grounds that the same is irrelevant, incompetent, and not the best evidence under the statutes of frauds and perjuries. Upon this question there was no ruling of the court, or exception, until after the offer of proof. The defendants below then made the following offer of testimony:

"The defendants now offer to show and prove by Solomon Smith, the witness now on the stand, that sometime in August 1871, the plaintiffs, Solomon Smith, and Julia Smith, his then wife, by a verbal agreement with Noah M. Blankenship, sold the lands in controversy to said Blankenship; that said agreement was as follows: Noah M. Blankenship was to give Solomon Smith a warranty deed to 286⅔ acres of land in Pulaski county, Kentucky, (describing it as the 286⅔ acres of land mentioned in defendants' second defense is described,) and said Blankenship was also to give said Solomon Smith a quitclaim deed to 200 acres of land in Pulaski county, Kentucky, (describing it as the 200 acres of land is described in defendants' second defense,) and said Blankenship was also to assign to said Solomon Smith a judgment in the circuit court of Pulaski county, Kentucky, (describing it as the judgment in the defendants' second defense is described,) and that was all that said Blankenship was to give said plaintiff for said land in controversy; and that in consideration of said Blankenship's performing said several acts on his part, the

said plaintiffs orally agreed to execute to said Blankenship a warranty deed to the land in controversy. That after the said agreement between the said plaintiffs and said Blankenship was made, and while the plaintiffs were still in possession of the said lands in controversy, said Solomon Smith was informed by defendants, W. M. Wicks and Harrison Mays, that they had bought the land in controversy of said Blankenship, and that the said plaintiffs, with the intention of carrying out their said agreement with Blankenship, and the agreement they had been informed had been made between said Blankenship and the defendants for the sale of said lands, moved off the said lands in controversy, and delivered up to said defendants the key to the house on the said lands, the house in which, up to that time, they had been living, for the purpose of said defendants taking possession of said lands."

The court thereupon sustained the objection and ruled out the testimony. Exceptions were duly taken; and the correctness of this ruling is the question now presented for our consideration. It may be remarked that all the matters

1. Ejectment; defense.

alleged in the second, third, and fourth defenses, could have been given in evidence under the mere denial of the first defense. For the statute has provided, that in these actions it is sufficient for the defendant to deny generally the title alleged in the petition. Gen. Stat. 748, § 596; *Stout v. Hyatt*, 13 Kas. 233. It is also clear, that the facts stated in the second, third, and fourth defenses, if true, constituted a perfect defense to this action, and established a complete equitable title in the defendants, and that too although the allegations therein were specifically of a *parol* agreement for the sale of the property. There was a parol contract, receipt of price, and delivery of possession,

2. Setting up facts in defense.

besides matters of estoppel. *Edwards v. Fry*, 9 Kas. 417. And while these three defenses were unnecessary, they were notice to the opposite party, and the court, of at least one line of defense, and the scope of a part of the testimony. Again, there was no question as to this testimony being in the line of the defense set out fully in the answer—no intimation on the part of the court that it de-

sired to have the relevancy of the testimony disclosed, or query as to the other testimony to be offered. The offer was entirely a voluntary one on the part of the defendants, made immediately upon the objection to the question. And again, the offer did not purport to be of all the testimony the defendants had, but simply of the matters they proposed to prove by the witness then on the stand. Though the facts stated were all that could be proved by this witness, *non constat* that other witnesses were not present to prove all the matters in the answer. On the other hand it may be conceded, that the matters stated in the proffer of proof were not of themselves sufficient to create an equitable title. They disclose simply an executory contract, with no performance on the part of either party, or at least with none on the part of the vendee. Now under these circumstances was there error in the ruling of the court? We think there was. There can be no question of the proposition, that where testimony apparently irrelevant is offered, the court may properly reject it unless its relevancy is disclosed by a proffer of other and further testimony. The rule is well stated in the case of *Abney v. Kingsland*, 10 Ala. 355, where the court says, "Where evidence is pertinent, but insufficient, the court should not assume that the party has no further proof to adduce, and reject it; but if it is *prima facie* irrelevant, it is incumbent upon the party offering it to show how it may become relevant by connecting it with other facts, and if this is not done it should not be received." See also *Baker v. Lessee of Swan*, 32 Md. 355; *Piper v. White*, 56 Penn. St. 90; *Howard v. Coshow*, 33 Mo. 118; *Depuy v. Williams* 26 Cal. 315. Now the testimony offered, was *prima facie* relevant and pertinent. It was evidence of a fact specifically alleged, and which with the other facts alleged constituted a perfect defense. True, the answer did not in terms allege whether the contract was in writing, or parol; but the manner in which it was stated, in connection with other facts, was clear intimation that a parol contract was all that was intended, for if it were a written contract the other facts were unnecessary,

*3. Offer of testimony.*

and secondly, it was immaterial whether the contract were one way, or the other, for either, taken in connection with the other facts alleged, was sufficient. It appears therefore, that, under an answer alleging a series of facts which taken together constitute a full defense, a question is asked as to the existence of one of those facts, and that then, without any inquiry by the court or the opposite party as to the extent of the further proof, and with only a statement by the defendant that he proposed to prove certain facts by the witness on the stand, without intimation as to what other witnesses or further testimony he had, an objection is sustained to the question. This we think was error.

But say counsel, a pleading is not presumed to be true, except when challenged by demurrer; and although the allega-

4. Relevancy of testimony; pleadings. tions of the answer were sufficient, the court was not to asssume them to be true, and base its rulings accordingly, but was justified in basing its rulings solely upon the oral statement of counsel. We are aware of the fact that since verification of pleadings has been done away with, there has been a great laxity of statement in them. Many counsel seem to think it entirely immaterial how much of unquestioned fiction they incorporate into their pleadings, especially their answers. But it is still true, that the issues presented to the court for hearing and trial arise out of the matters set forth in the pleadings, and still true that the pleadings are professional statements by counsel of the claims of their clients, and the matters they expect to prove. The oral statement of counsel in the presence of the court, as to what he expects to prove, is not a whit more sacred than his written statement in the pleading. True, he may often be mistaken in either; he may be misled or misinformed by his client, and therefore does not guarantee the truth of either. But still, in both, and in one as much as the other, he is presumed to be acting in good faith, and to state only those matters of which there is a reasonable expectation of proof. In this respect we are constrained to think there is a great growing evil. There is a disposition to look upon pleading as af-

Obligation, and duty of counsel. fording a legitimate field for the exercise of counsel's imagination, and to regard the signature of counsel thereto as nothing more than a means of giving the party a standing in court; while in fact the pleadings are, or should be, the exact statements of the facts the parties expect to prove; and the signatures of counsel, their professional statement that they believe those facts to be true. If all counsel would govern themselves by this rule, there would be less litigation, greater dispatch of business, a higher standard of professional character, and less occasion for severe reflections upon law and lawyers. We do not mean to decide that a court may not, if it has any reason to doubt the *bona fides* of any pleading, interrogate counsel as to the facts he expects to prove, and rely upon the counsel's answer as a full statement of all the facts, and rule upon the admissibility of evidence accordingly. That question is not before us. Nothing of that kind took place. The court asked no question. Counsel did not pretend to disclose all his evidence. We may remark in passing however, in reference to such a case, that there should be no misunderstanding between court and counsel as to the purpose and scope of the interrogatory, that counsel may be careful to state all the facts he expects to prove; for it would be unjust to have the rights of a litigant cut off by an omission of counsel, in the hurry and excitement of a trial, to gather into his statement all the facts of his client's case; and it must be remembered, that the same rule must apply to all cases, whether they contain but a single fact, or a long series of facts, some of them, it may be, trivial and minute, yet, like the links of a chain, absolutely essential to the case.

Without pursuing this digression any further, and returning to the case before us, it seems to us that the ruling of the court cannot be sustained; that the testimony offered was relevant and pertinent, and should have been received. For this error the judgment must be reversed, and the case remanded for a new trial.

All the Justices concurring.