## WM. M. WICKS, *et al.*, V. SOLOMON SMITH, *et al.*

1. RESCISSION *of Fraudulent Contract; When Right to Rescind is not Lost.* The mere delay of the party who finds himself defrauded, in rescinding a fraudulent contract and returning the property he has received under the contract, does not take away the right, if in the interval, while he is deliberating, no innocent third party has acquired any interest in the property, and the wrong-doer, in consequence of the delay, is no way affected injuriously in his position.

2. HOMESTEAD, *Verbal Contract for Sale of; Part Performance and Possession by Purchaser; When Husband or Wife may Rescind.* Where there is a verbal contract for the sale of a homestead made by the husband and wife to another party, with part performance and possession by the purchaser of such homestead, and upon investigation soon after, it is discovered by the husband and wife that they have been greatly defrauded by the fraudulent representations of the purchaser, and on account of such fraud have the right to avoid the contract, *held,* as the homestead cannot be alienated without the joint consent of both husband and wife, either or both have the right, upon the return of the property received under the contract, to rescind the contract; and any act of the husband in affirmance or recognition of such fraudulent contract, after the discovery of the fraud committed, without the consent or knowledge of the wife, is not binding on her.

### *Error from Woodson District Court.*

EJECTMENT, brought by *Solomon Smith* and *Julia Smith,* as plaintiffs, against *W. M. Wicks* and *Harrison Mays,* as defendants, to recover certain real estate in Lyon county. The action was commenced in Lyon district court, and afterward the place of trial was changed to Woodson county, where the case was tried at the June Term, 1875. It was brought to the supreme court at the July Term, 1877, and is reported in 18 Kas. 508. The judgment of the court below was reversed, and the case remanded for a new trial. At the November Term, 1877, of the district court, the defendants in error, plaintiffs below, had judgment against the plaintiffs in error, defendants below, who bring the case here for review.

*John V. Sanders,* for plaintiffs in error.

*Ruggles, Scott & Lynn,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This action was here at the July term of
the court for 1877, and is reported in 18 Kas. 508. It is
again brought to this court by the plaintiffs in error to ob-
tain another review of the proceedings had in the court below,
which resulted in a judgment of that court against them in
the new trial granted by this court. Many exceptions were
taken on the trial, and several alleged errors are set forth in
the petition in error, but in the argument contained in the
brief of their counsel, the only alleged errors to which our
attention is called or reference is made, are the refusal of the
court to instruct the jury to find for the defendants, (plain-
tiffs in error,) and the direction of the court concerning the
tender to Blankenship and the acceptance of the same. The
latter instruction was as follows: "If they (the defendants
in error) had the legal title to the land in controversy, and
while so holding the legal title, they were induced by false
and fraudulent representations on the part of Blankenship to
sell to him, without sufficient consideration, the premises;
that after discovering the fraud and before commencing this
action they tendered to Blankenship all they had received
from him on such sale, and if such tender was received and
accepted by Blankenship, then the equities of the plaintiff
are prior and superior to those of the defendants, (plaintiffs
in error;) and you should find for the plaintiffs, unless you
also find that the plaintiffs by some act or word of theirs are
estopped from setting up their equities, if any they have."

The particular point made concerning the instruction re-
fused and the instruction given is, that there was not a valid
or a sufficient rescission of the contract to entitle defendants
in error to recover. The testimony shows that the agreement
to sell the property in controversy to Blankenship by the
Smiths was made in the summer of 1871. The fraud of
Blankenship was discovered in December 1871. On Janu-
ary 5th, 1874, before this suit was commenced, the defend-
ants in error tendered to Blankenship all they had received

from him on the sale of their land, and he accepted the same. Counsel for plaintiffs in error say that the delay of the defendants in error had been so great that the time for rescinding the contract had passed long before it was made, and submit, "that as a reasonable time for rescission is a mixed question of fact and law, and that after the facts are found the law makes the application and determines whether the time was reasonable or not, the law under the circumstances in this case is, that one month would be more than a reasonable time; and if one month would not, six would; and if six would not, one year would; and if one year would not, one year and a half would; and if that would not, twenty-three months would; and consequently, as there was no dispute in the evidence as to the facts, the most of them being proved by Smith himself, the court erred in not instructing the jury to find for the defendants, and also in refusing them a new trial."

It is generally true that where anything of value has been received by the defrauded party, he must not only tender back all he has received, but the rescission must be prompt or within a reasonable time after the fraud is discovered; but mere delay in rescinding the fraudulent contract does not take away the right—such delay being material principally as it furnishes evidence of an election to affirm. The rule is well stated in a late English case, as follows:

"In such cases the question is: Has the person on whom the fraud was practiced, having notice of the fraud, elected not to avoid the contract, or has he elected to avoid it, or has he made no election? We think that so long as he has made no election, he retains the right to determine it either way subject to this, that if in the interval whilst he is deliberating, an innocent third party has acquired an interest in the property, or if in consequence of his delay the position of the wrong-doer is affected, it will preclude him from exercising his right to rescind. Lapse of time without rescinding would furnish evidence that the defrauded party has determined to affirm the contract, and when the lapse of time is great, it probably would, in practice, be treated as conclusive evidence to show that he has so determined." (*Clough v. Railway Company*, 7 Ex. Law Rep. 26.)

In this case, all the parties had notice of the intention of the defendants in error to avoid the contract with Blankenship as early as April 8th, 1872, when the action was commenced in Lyon county to cancel the blank deed signed by the Smiths and filled up without their knowledge or consent to Wicks and Mays; and as said Blankenship accepted back the property given by him for the land in dispute, such acceptance waives as to him, at least, any defense or claim that there was too great delay in making the rescission. It is even questionable whether the plaintiffs in error can set up and insist upon, as a defense, the right of Blankenship to have a return of his property from the Smiths, or the delay in their making such return, unless by this action the plaintiffs in error have in some way been prejudiced. (*Stevens v. Austin,* 1 Metc., 557; *Ladd v. Moore,* 3 Sandf. S. C. N. Y. 589; *Pearse v. Pettis,* 47 Barb. 276.)

Again, upon the testimony it is doubtful whether the property received from Blankenship under the contract of sale was of any value or possible benefit. If it was absolutely worthless, no tender or return of it was necessary. (*Bank v. Peck,* 8 Kas. 664; *Smith v. McNair,* 19 Kas. 330.)

In whatever light we may view the subject, this delay in no way affected plaintiffs in error. As before stated, they had notice in April, 1872, of the election of the Smiths to rescind the contract with demand of the property. All the interest the plaintiffs in error acquired, they became possessed of in the fall of 1871, and prior to the discovery of the fraud of Blankenship. As they purchased merely an equitable title, they were bound to take notice of all counter-equities which were outstanding in favor of the defendants in error, who held the legal title, and, as Wicks and Mays were claiming only under a mere equitable title, they were not *bona fide* purchasers, so as to defeat prior equities existing in in favor of said Smith and wife. (*Stout v. Hyatt,* 13 Kas. 232.)

Counsel for plaintiffs in error claim, however, that as Solomon Smith, on his return from a fruitless search in Kentucky for the real estate which the conveyances and assign-

ments of Blankenship apparently transferred to him, accepted from Blankenship in December, 1871, as part payment for his expenses to Kentucky, a deed of a lot in Emporia of about the value of $25, which Blankenship had received from Wicks and Mays in part payment for the land in controversy; that this was an affirmance of the contract, or at least such action as estopped any rescission on the part of the defendants in error. This position is not tenable. The land for the possession of which this action was brought in the court below, was the homestead of the Smiths. It could not be alienated without the joint consent of the husband and wife. Her consent to the contract with Blankenship was obtained by fraud. Being one of the defrauded parties, and the property being a homestead, she had the right, on discovery of the fraud, to reject the contract, to avoid the sale. She exercised that right. She did not participate in the acceptance of the deed from Blankenship of the town lot in Emporia. Construing the finding of the jury under the issues in the case and the instructions of the court, it does not appear that the husband in that matter acted with her consent or knowledge, or under direction or authority. He was not her agent. She never consented to any affirmance of the fraudulent contract. She elected to disaffirm it, and the independent and separate act of her husband could not defeat her election to recover the homestead, nor take from her the interest she had in it. But the conduct of the husband is almost if not fully justifiable. He accepted the conveyance of the town lot in part payment of his own personal expenses, expended in a wild hunt, under the direction of Blankenship, after lands which either had no existence or were almost worthless when found, and at a time when he was without actual knowledge of all the facts connected with the condition of affairs under which Wicks and Mays had possession of his homestead. On October 5th, 1874, he tendered back to Wicks and Mays a quitclaim deed for the town lot, and afterward deposited it in court to be delivered to said parties. Before the commencement of the suit, Blankenship

had accepted all the property he had turned over on the sale to the Smiths. Thus, so far as he had been able, he has placed all the parties *in statu quo.*

We conclude that there was no error in the direction of the court, prejudicial to Wicks and Mays, concerning the rescission of the fraudulent contract, and therefore the judgment of the district court will be affirmed.

All the Justices concurring.