Argued June 2, modified July 6, 1920.

## JAMES v. WARD.*

(190 Pac. 1105.)

### (See, also, 84 Or. 375, 164 Pac. 370.)

**Trial—Action at Law—Answer—Equitable Relief—Statutes.**

1. Under Section 390, L. O. L., as amended by Gen. Laws of
1917, page 126, defendant in an action at law setting up in his
answer facts entitling him to relief in equity and material to his
defense, the case is properly proceeded with as a suit in equity
till determination of the issues thus raised.

**Vendor and Purchaser—Contract—Rescission—Evidence.**

2. Evidence in suit between parties to contract for sale of land
*held* not to show agreement that it should be rescinded if title was
not perfected by a certain date.

**Appeal and Error—Trial—Findings—Entitled to Weight—Disputed
Question of Fact.**

3. Opinion of the trial court in an equity case on a disputed
question of fact is entitled to great weight because of opportunity
had of seeing and hearing the witnesses.

**Contracts—Modification—Waiver—Acquiescence.**

4. A party to a contract may waive any term intended for his
benefit, and this, if agreed to and acquiesced in by the other
party, modifies the contract accordingly.

**Vendor and Purchaser—Contract—Rescission—Fraud.**

5. A purchaser by treating the contract in force and continuing
in possession of the premises enjoying the benefits after knowledge
of fraudulent representations waives right to rescind on account
thereof.

**Vendor and Purchaser—Taking Possession by Vendor—Abandon-
ment—Mutual Rescission.**

6. The taking possession by vendor of the premises when aban-
doned by the purchaser does not constitute a mutual rescission of

---

*On waiver of purchaser's right to rescind contract for purchase
of real property, see note in 30 L. R. A. (N. S.) 872. REPORTER.

the contract of sale; this being done that a third person, against whom he was prosecuting a suit to quiet title, should not gain an advantage by entering into possession and to protect the buildings.

**Appeal and Error—Foreclosure of Contract—Excessive Attorney's Fee.**

7. Allowance of excessive attorney's fee on foreclosure of contract for sale of land is not immaterial, though there be no personal judgment, and purchaser has indicated intention not to reinstate the contract, as conditions may change and he may desire to redeem.

**Vendor and Purchaser—Foreclosure of Contract—Attorney's Fees—Amount Due.**

8. Attorney's fees decreed in suit to foreclose contract of sale of land should be estimated, not on the full balance of unpaid price, but only on the amount found due, by payment of which, with such attorney's fee, it was decreed the purchaser might reinstate the contract.

From Lane: JOHN S. COKE, Judge.

Department 2.

On April 14, 1913, plaintiff, Frances E. James, acting through her husband, W. F. James, entered into a contract in writing with defendant, George D. Ward, by the terms of which defendant agreed to sell to the plaintiff a tract of land in Lane County, Oregon, consisting of about 640 acres, described in the complaint, for the sum of $18,000, of which $1,000 was paid in cash, and 240 acres of land in South Dakota at the agreed price of $6,000 was taken in part payment therefor, making a total payment of $7,000 at the date of the contract, and the balance of $11,000 was to be paid on or before ten years after date, with interest at 7 per cent per annum, payable annually. The vendee was to pay all taxes assessed during the time after January, 1913. There were included in the deal with the Lane County farm horses, cattle and sheep, farm implements, and other personal property variously estimated in value from $1,000 to $2,000, all of which personal property was

delivered by defendant to plaintiff with the land. After making the contract plaintiff paid on different dates during the first year $667.25.

Plaintiff claims that the contract of sale was mutually rescinded by the parties, and brought this action to recover the amount paid thereon. Thereupon the defendant filed an answer in the nature of a cross-complaint in equity seeking to foreclose the contract on account of the default of the plaintiff in the payment of interest and taxes due and unpaid under the contract.

Plaintiff alleges that in July, 1913, plaintiff and defendant entered into a verbal contract by the terms of which the defendant agreed to furnish to plaintiff within a year from the date of the contract an abstract showing clear and perfect title to the land described in the contract; that defendant failed to furnish such abstract at any time. Plaintiff further states that during the winter of 1914 the parties mutually agreed to rescind the contract, and plaintiff surrendered to defendant the possession of the real estate described in the contract. Plaintiff avers that it was mutually understood by and between the parties at the time of signing the contract that the defendant would at once deliver to plaintiff an abstract of title to the Lane County land showing clear title in defendant, and that at the time defendant represented that he had a good title to the land.

Neither the personal property, the abstract of title, nor the South Dakota land was mentioned in the written contract. In May, 1913, plaintiff discovered that the contract failed to provide for an abstract of title to the Lane County land and had some talk with the defendant in regard thereto. It was at this time plaintiff claims defendant agreed that, if he did not

furnish the abstract showing good title within a year, or by the time the next interest would become due, the plaintiff would not be required to take the land, and that he would repay her what she had paid thereon.

The defendant claims that at the time of entering into the contract it was verbally agreed that at the time of the last payment to be made under the contract and when a deed was to be delivered, that he should furnish to plaintiff an abstract of title to the property. The annual interest for the first year came due on April 14, 1914. On August 26th of that year Ward commenced a suit in the Circuit Court for Lane County to foreclose the contract on account of the failure to pay the interest and taxes. A decree of foreclosure was rendered by the trial court, and upon appeal to this court the decree was reversed and the suit was dismissed without prejudice to the rights of either party: See *Ward* v. *James,* 84 Or. 375, 385 (164 Pac. 370). In the present suit the defendant denies that he agreed to furnish an abstract of title before the interest became due on or before April 14, 1914, or at any time before final payment, or that he agreed to rescind the contract.

It appears that after the execution of the contract plaintiff assigned the same and her interest in the Lane County land and personal property to George R. Rickman and Adaline Rickman, and delivered the possession of the land and personal property to them. They remained in possession thereof until March 20, 1915, when they vacated and abandoned the premises, as plaintiff asserts, on account of the defective title of defendant. Thereupon defendant, Ward, entered into the possession of the land. The personal property was never returned or offered to be returned

to Ward. Part thereof seems to have been kept or dissipated by the Rickmans, and a portion thereof was paid to a real estate broker as commission for making the deal between plaintiff and the Rickmans.

To defendant Ward's further and separate answer in equity, showing that the contract had never been rescinded and seeking to foreclose the same, plaintiff replied, setting up all of the facts that were in her amended complaint, and asking that the answer in equity be dismissed, and the issues be tried to a jury, as in an action at law.

The trial court found that there was no agreement on the part of defendant to furnish an abstract of title until final payment should be made by plaintiff; that there was no agreement on the part of defendant to rescind the contract; and that the sum of $3,954.12 was then due from plaintiff, Frances E. James, to defendant George D. Ward, upon the contract, together with $800 attorneys' fees in the suit. The court decreed that the contract be foreclosed—

"Provided that the plaintiff, Frances E. James, shall have a period of six months from the date of this decree to pay into court the amount so found due as aforesaid, together with the attorneys' fees and the costs of this action, with interest thereon, except as to attorneys' fees, at the rate of 7 per cent per annum from the date hereof, and in the event of the payment of such amount the said Frances E. James, plaintiff, shall be entitled to and receive a credit of the sum of six hundred dollars, the rents collected by the defendant."

And upon failure of plaintiff to pay the amount the contract should be foreclosed and the action at law enjoined. From this decree plaintiff appealed.

MODIFIED.

For appellant there was a brief and an oral argument by Mr. H. E. Slattery.

For respondent there was a brief over the names of Mr. O. H. Foster and Messrs Williams & Bean, with an oral argument by Mr. John M. Williams.

BEAN, J.—1. Plaintiff assigns error of the trial court in assuming jurisdiction of this cause in equity and refusing to relegate the parties to the court of law in foreclosing the contract. Error is also predicated in the allowance of $800 as attorneys' fees. It is first urged by counsel for plaintiff that, "as the plaintiff instituted her action at law first the court erred in compelling her to submit to the jurisdiction of a court of equity."

Section 390, L. O. L., as amended by General Laws of Oregon, 1917, page 126, which enacted a radical change in equity practice in this state, provides among other things that—

"In an action at law where the defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity, and material to his defense, he may set such matter up by answer, without the necessity of filing a complaint on the equity side of the court; and the plaintiff may, by reply, set up equitable matter, not inconsistent with the complaint and constituting a defense to new matter in the answer. Said reply may be filed to an answer containing either legal or equitable defenses. The parties shall have the same rights in such case as if an original bill embodying the defense or seeking the relief prayed for in such answer or reply had been filed. Equitable relief respecting the subject matter of the suit may thus be obtained by answer, and equitable defenses to new matter contained in the answer may thus be asserted by reply. When such an equitable matter is interposed, the proceedings at law shall be stayed and the case shall thereafter proceed

until the determination of the issues thus raised as
a suit in equity by which the proceedings at law
may be perpetually enjoined or allowed to proceed
in accordance with the final decree; or such equitable
relief as is proper may be given to either party.   If,
after determining the equities, as interposed by an-
swer or reply, the case is allowed to proceed at law,
the pleadings containing the equitable matter shall
be considered withdrawn from the case, and the court
shall allow such pleadings in the law action as are
now provided for in actions of law.   No cause shall
be dismissed for having been brought on the wrong
side of the court.   The plaintiff shall have a right
to amend his pleadings to obviate any objection on
that account.   Testimony taken before the amend-
ment and relevant to the issue in the law actions
shall stand with like effect as if the pleadings had
been originally in the amended form.''

The defendant set up in his answer to the com-
plaint in the action at law facts which entitled him
to relief in equity and which were material to his
defense.   The suit is in the same condition as though
under the old statute plaintiff had answered the com-
plaint and filed a complaint in equity in the nature
of a cross-bill.

The proceedings are in conformity with the statute
as amended.   The plaintiff had a right by her reply
to set up equitable matters not inconsistant with her
complaint constituting a defense to the new matter
in the answer.   The parties had the same rights in
this case as if an original bill seeking the relief
prayed for in the answer had been filed.   There was
no error in the interposition of a court of equity.

2. The case on the merits centers upon the ques-
tion of whether or not there was a mutual rescission
of the contract.   Plaintiff and her husband and their
minor son testified to the purport that according to

their understanding there was an agreement for a mutual rescission of the contract in case defendant did not perfect his title and furnish an abstract of title on or before April 14, 1914.

There has been no offer on the part of plaintiff to make full payment. Indeed, there has been no tender of the amount due under the terms of the contract. Apparently the defendant, at the time the contract was executed, thought he had good title to the land. It is to be regretted that so important a matter as the abstract of title was omitted from the contract. Whatever the agreement or understanding was at the time of the contract, it seems the parties have gone beyond that. Reliance of plaintiff is placed upon a subsequent agreement. On April 14, 1914, plaintiff with knowledge of the condition of the title of Ward to the land and of the failure of Ward to furnish the abstract by that time and of the alleged false representations of Ward, instead of rescinding the contract or attempting to rescind by a letter of that date which is in evidence called upon Ward to perfect the title. She had obtained an abstract and after calling Ward's attention to the defects in the title used this language in the letter:

"I would therefore request that you take such steps as are necessary to put the title in marketable condition. * * With reference to the interest credits on the contract, I would thank you to give me the credits due on the contract, possibly the best way would be to notify Mr. Wells, your attorney, to make that notation on the contract for you."

Afterward Ward instituted a suit to perfect his title and eliminate the objectionable features raised by the attorney who examined the abstract of title for Mrs. James, and acquired quitclaim deeds from various persons, and at the time of the trial of this

cause it is conceded, as we understand, that Ward
had a complete title to the land. The abstract of
title and the various deeds are contained in the rec-
ord as well as the record of the suit to quiet title.

Scrutinizing the testimony carefully, it would seem
that Ward desired time to straighten up his title, and
that there never was a meeting of the minds of the
parties to the effect that, if the title was not completed
by April 14, 1914, that the contract should be rescinded.
There has been no offer on the part of plaintiff to
return the livestock and other personal property
which was sold and delivered by defendant to plain-
tiff.

3. The trial court had the opportunity of seeing
the witnesses, and hearing them testify, and its
opinion on this disputed question of fact is entitled
to great weight. We are constrained to note that
there is more conflict in the way in which the parties
understood the arrangements, or conversations sub-
sequent to the contract than there is in regard to
what was said and done. That Ward was to furnish
an abstract of title is not disputed. As to when he
was to furnish it according to the subsequent ar-
rangement there is a great chance for a misunder-
standing on the part of Mrs. James.

4. One of the parties may waive any terms of the
contract which are intended for his benefit, and this,
if agreed to or acquiesced in by the other modifies
the contract accordingly. Parties to a contract of
any kind, whether written or verbal, may at any time
rescind or terminate it by their mutual consent or
agreement, and either restore each other to the *status
quo* or fix their respective rights and liabilities upon
such abrogation of the contract. They may release
themselves from a contract in the same manner that
they may bind themselves by a contract: Black on

Rescission and Cancellation, § 521. It is stated in Section 523 of that work that:

"So long as a contract remains executory, a mutual agreement of the parties to rescind it requires no new or independent consideration, for the release of each of the parties from his duties and obligations under the existing contract is sufficient consideration for his agreement to release the other."

Authority to the contrary is there noted. If Mrs. James ever had the right to demand of Ward an abstract of title showing a marketable title to the Lane County land prior to the time she requested that he complete his title, she waived that right and acquiesced in Ward taking reasonable time to perfect the record of his title.

5. Plaintiff also seeks to rescind the contract on the ground that Ward falsely represented that he had a good title to the land. The plaintiff and those claiming under her, the Rickmans, remained in possession of the premises and enjoyed the benefits thereof from about the time of the execution of the contract until March 20, 1915, and never during the period after she discovered the alleged defects in the title, which appears to have been prior to April 14, 1914, did she attempt in any way to rescind the contract upon any grounds until she filed an amended answer in the former suit on March 8, 1915, in which they sought to rescind the contract by reason of a defective title.

The general rule is laid down in 39 Cyc., page 1432, subdivision h, as follows:

"Any action on the part of the purchaser treating the contract as in force, when done with a knowledge of facts creating a right to rescind, amounts to a waiver of the right to rescind because of the existence of such facts."

It is stated in the opinion in the case of *Scott* v. *Walton*, 32 Or. 460, at page 464 (52 Pac. 180, at page 181), thus:

"A party who has been induced to enter into a contract by fraud, has, upon its discovery, an election of remedies. He may either affirm the contract, and sue for damages, or disaffirm it, and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract."

This is the established rule. Several material questions bearing upon this case were thoroughly discussed by Mr. Justice McCamant in the former case, 84 Or. 382 (164 Pac. 370).

6. It is fairly shown in the record that the taking of possession of the property by Ward on March 20, 1915, when it was abandened by the Rickmans, did not constitute a rescission of the contract. Ward took possession in order that the party against whom he was prosecuting a suit to quiet title would not gain an advantage by entering into possession of the premises and in order to protect the buildings, which had been left with the doors open, and prevent dilapidation of the premises.

Plaintiff has failed to prove an agreement between herself and defendant to restore each other to the *status quo,* or mutually rescind the contract.

7, 8. Plaintiff claims error on account of allowance of attorneys' fees. Defendant claims that as she has signified an intention not to pay the amount found due upon the contract, the amount of attorneys' fees is immaterial; there not being a personal judgment against plaintiff. Conditions may be changed and plaintiff may yet desire to reinstate the contract. It seems the attorneys' fees were estimated upon the balance of the contract, $11,000 and interest. The court decreed that the plaintiff might reinstate the contract by paying $3,954.12 together with attorneys' fees, which we think from the testimony should be 10 per cent of $3,954.12 of the amount found due. Plaintiff should be allowed six months from the time of entering the mandate in this cause in the lower court to pay the amount found due upon the contract by the trial court together with 10 per cent attorneys' fees, with interest on the amount of the decree, excepting the attorneys' fees, at the rate of 6 per cent per annum from January 13, 1919, the date of the original decree. Neither party should recover costs upon this appeal.

The decree of the lower court, modified as suggested, is affirmed.            MODIFIED.

HARRIS, JOHNS and BENNETT, JJ., concur.