Argued November 17; affirmed December 15, 1931

## HOLMES *v.* BURLINGAME CO.

### (6 P. (2d) 44)

*Albert W. Gentner,* of Portland, for appellant.

*Cecil H. Greene,* of Portland (Beach, Simon & Greene and Senn & Recken, all of Portland, on the brief), for respondent.

BROWN, J. The plaintiff asserts that the trial court erred in finding that she had lost her right to rescind the contract by inaction or by affirmative action in relation to the property after she discovered the fraud.

The testimony of the plaintiff, upon which the trial court based its decision, is, in part, as follows:

"Q. What was it made you buy out there? * * * A. Mr. Scatterday's and especially Mr. Nosler's statement that it was going to be an opportunity to make a profit soon. Mr. Nosler said that he knew that I could make five hundred dollars on that in six months. I had said something to Mr. Baker that made him say this to me: 'Of course, you could sell that in three months or six months and make money on it, but if you could hold it for nine months or a year or a year and a half, that is when the big money is made.'

"Q. What was the limit they put on it within which it would take you to make this five hundred dollars profit? A. That was six months, according to Mr. Nos-

ler  *  *  *  He was the only one that made a definite statement like that.  *  *  *  He made a positive statement to that effect, that 'I positively know that you can make five hundred dollars profit in six months; that you can make five hundred dollars on that lot in six months. I positively know that.'

"Q. And their plan was to take it off from your hands absolutely? A. Yes.

"Q. If these statements had not been made, would you have bought this property out there? A. Most certainly not.

*    *    *    *    *

"Q. You say Mr. Nosler is the only person that ever made a definite statement to you about the resale of the property and the profit you could make out of it? A. The only one who named a definite profit that I could make.

"Q. And Mr. Nosler told you that you could resell the property in six months at a profit of five hundred dollars? A. Yes.

"Q. And you want the court to understand now that you relied upon that statement of Mr. Nosler's that you could resell the property in six months and make a profit of five hundred dollars, and that was the statement that induced you to purchase that property? A. Yes.

"Q. Now, as a matter of fact, you did not make a resale of that property, or anybody make a resale of that property, within six months after you bought it? A. No.

"Q. But you continued to make payments after that time each and every month for a period of some fifteen months? That is correct, isn't it? A. Yes.

"Q. Now isn't it a fact, Miss Holmes, that the houses that you stated in your complaint they were not constructed in ninety days as you mentioned? A. No, they were not. Sixteen were to be started within ninety days.

"Q. You knew that they were not started at the end of ninety days, didn't you? A. Yes.

"Q. And yet you made these payments thereafter? A. Yes.

"Q. Did you ever make any complaint to any of the officers of the Burlingame Company about the re-sale of the property, or about them not building or causing these houses to be built on the property? A. No, Mr. Baker had said that the longer that I could hold it, the better, and I went on paying.

"Q. Now did you read in the papers during the months of July and August of 1928 of the controversy that Mr. Mount of the Better Business Bureau brought against the Clarke Company? A. Yes.

"Q. You read the complaint that he brought against them? A. Yes.

"Q. And you knew at that time that the Clarke Company was leaving the city, did you not? A. Yes.

"Q. And you knew subsequent to that time that they were not maintaining their offices here? A. Yes.

\* \* \*

"Q. And you knew that the Clark Company could not do anything further for you with reference to these promises? A. Yes.

"Q. And you never had any talk with the Burlingame Company or its officers with respect to any of these promises? A. Only at the window when I went in to the window to make payment—no, not about this, I checked up on prices of lots in the neighborhood a time or two and found that they had all gone down instead of up."

The following language used by the trial judge herein in disposing of the motion to dismiss fully expresses the thought of the writer of this opinion:

"It doesn't give me any particular pleasure to decide against a person who I am convinced has been the victim of misrepresentations and fraud, but I am bound by the principles of law and of equity, as I understand them. The evidence in this case shows beyond any question, it comes from the plaintiff's own mouth, that she knew that she had been deceived within

a few months—perhaps it was six months after she had entered into this contract, and it shows also that after she had obtained that knowledge, she continued to make the payments on the property, and that she made the payments of taxes.''

The trial court based its decision on the doctrine pronounced by this court in *Scott v. Walton*, 32 Or. 460 (52 P. 180), where Mr. Justice R. S. BEAN, in rendering the opinion, wrote:

''A party who has been induced to enter into a contract by fraud has, upon its discovery, an election of remedies. He may either affirm the contract and sue for damages, or disaffirm it and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return, or offer to return, what he has received under the contract. He can not retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract: *Schiffer v. Dietz*, 83 N. Y. 300; *Parmlee v. Adolph*, 28 Ohio St. 10; *Williamson v. N. J. S. R. R. Co.*, 29 N. J. Eq. 311; *Wicks v. Smith*, 21 Kan. 412, [30 Am. Rep. 433]; *Marston v. Simpson*, 54 Cal. 189.''

This statement of the law which governs in the cancellation and rescission of contracts has been cited with approval over and over again. In the case of *Grant v. Cartozian Bros., Inc.*, 120 Or. 607 (253 P. 531), this court, in an opinion prepared by BURNETT, C. J., quoted the above precept from *Scott v. Walton*, supra, and called it ''the standard precedent.''

In the more recent case of *Cameron v. Edgemont Inv. Co.,* 136 Or. 385 (299 P. 698), it was held that the plaintiff, through her negligence or inaction, lost her right to rescind a contract made for the sale and purchase of realty. In considering the issue there presented, the court said:

"Her conduct in continuing to make payments pursuant to the provisions of the contract, after she had acquired knowledge that the defendant did not intend to resell her lot, amounted to a ratification of the contract. We quote from *McCabe v. Kelleher,* 90 Or. 45 (175 P. 608, 610):

" 'As against a subsequent attempt at utter rescission and recovery of what has been paid on the purchase price, payment of installments of the money agreed to be paid, with knowledge of the fraud, will amount to such a ratification as will defeat complete rescission.'

"In *James v. Ward,* 96 Or. 667 (190 P. 1105, 1108), this court quoted from 39 Cyc., 1432, as follows:

" 'Any action on the part of the purchaser treating the contract as in force, when done with a knowledge of facts creating a right to rescind, amounts to a waiver of the right to rescind because of the existence of such facts.'

"See to the same effect, *Kruse v. Bush,* 85 Or. 394 (167 P. 308); 12 R. C. L., Fraud and Deceit, p. 413, § 159; Bigelow on the Law of Fraud, p. 434; Annotation, 52 A. L. R., 1155; *Van Scherpe v. Ulberg,* 232 Mich. 699 (206 N. W. 323)."

There is nothing in our holding in the case before us that in any way conflicts with the decision of this court in *Boyer v. Edgemont Inv. Co.,* 135 Or. 161 (295 P. 471), which, in effect, was that the fact that the purchaser made payment on a contract for the purchase and sale of realty while negotiations were in progress toward effecting a compromise did not pre-

clude rescission for fraud. Our decision is also in complete harmony with the case of *Sharkey v. The Burlingame Co.*, 131 Or. 185 (282 P. 546), wherein it was held that "representation that sales agent at time of sale of lot was engaged in reselling other lots at a profit for other purchasers constituted a representation of an existing fact, and, since it was false and made to induce purchase, was actionable." Point 6, Syl.

Based upon the many prior adjudications made by this court on the subject at issue, we are compelled to hold that plaintiff's remedy by rescission has been lost to her by her acts which amounted to a ratification of the contract involved herein. Hence we affirm the order appealed from.

Neither party shall recover costs in this court.

BEAN, C. J., RAND and CAMPBELL, JJ., concur.