Argued January 6; affirmed January 12, 1932

## YOUMANS *v.* EDGEMONT INVESTMENT CO.

(6 P. (2d) 882)

*D. A. Norton* and *Nicholas Jaureguy,* both of Portland (James W. Crawford, of Portland, on the brief), for appellant.

*W. B. Shively,* of Portland (Winter & Maguire, of Portland, on the brief), for respondent.

CAMPBELL, J. On April 24, 1928, plaintiff entered into a contract with defendant to purchase Lot 6, Block 14, Terwilliger Heights, Portland, for the sum of $4,075, payable $1,018.75 on the execution of the contract and the balance to be paid in monthly instalments of not less than $61.25, including interest at the rate of 7 per cent per annum, on deferred payments. This suit is brought to recover payments made under said contract on the ground of fraud.

This sale was made through the "lunch and lecture" plan, patterned to some extent after the methods of Texas Guinan in her "Hello Sucker" night clubs.

Plaintiff alleges that he was induced to enter into said contract by certain false representations made by the agents of the defendant, "of material facts in regard to said real property and in connection with the purchase of said premises by the plaintiff." That the agents of defendant represented to plaintiff that all the homes and residence buildings then completed and in course of construction, especially those in the vicinity of Lot 6, Block 14, were built and being constructed by lot owners for their own homes and would soon be occupied. That several other purchasers of lots in the vicinity of said lots had let contracts for the erection of residences which they would occupy as soon as completed. That many other lots were sold to purchasers who had agreed to build homes for themselves. That they had already resold several lots in said addition for purchasers to those who wanted to build a home, at a handsome profit to the original purchasers. That said Lot 6 was worth and would resell for $5,000, and if plaintiff purchased said lot they would resell it for him at a nice profit. That said agents making the above representations well knew that plaintiff was not engaged in the real estate business and was unfamiliar with values of property in the district in question and had had no experience as a speculator or investor in real property, and had no time or experience to resell said lot. That the defendant, through its agents, represented to and promised plaintiff that they would resell said lot for plaintiff in a very short time and not later than one year from date of sale, for a profit of more than $400. Plaintiff further alleges that in August, 1928, he discovered that the agents of defendant, with whom he had dealt in entering into said contract, had left for parts unknown. Plaintiff thereupon called on the secretary of defend-

ant and informed the said secretary of the conditions surrounding the execution of said contract. The said secretary advised the plaintiff to take the matter of resale of said lot up with one G. J. Baker, a selling agent for defendant, which plaintiff did. He advised Baker of the conditions and representations of his entering into said contract. Baker informed him that he was aware that said representations had been made, but that on account of unfavorable publicity resulting from suits which had been instituted against defendant and its selling agents and representatives, including Baker, relating to representations claimed to have been made in the sale of lots in the same subdivision, Baker had temporarily discontinued making sales. He advised plaintiff to continue making his payments and that he, Baker, was satisfied that the suits would soon be terminated favorably to defendant and that the selling organization would proceed with their campaign of reselling said lots in a vigorous manner. That later, in the fall of 1928, plaintiff again made inquiry of defendant regarding the resale of his lot and was informed that the Moores-Beaver Company had succeeded Baker as selling agent. That plaintiff made several calls at the office of the Moore-Beaver Company and each time was informed that the representative handling subdivisions was not in. Plaintiff alleges that sometime thereafter he found a representative of the defendant upon Terwilliger Heights property and was informed by said representative that he was offering for sale some of the houses that were completed when plaintiff purchased his said lot and advised plaintiff "that no effort was being made to resell lots in said addition, which was the first information plaintiff had received that defendant had abandoned the resale of said lots and had no intention of selling plaintiff's

lot at a profit or at all, and the first knowledge plaintiff had that all of the representations made by defendant by and through its said agents and representatives were false and untrue.'' Plaintiff alleges that he had made the initial payment required by the contract and had paid twelve monthly installments, and then alleges ''that each and all of the foregoing representations, promises, agreements and conduct of the said defendant, by and through its agents and representatives, * * * were false, fraudulent, untrue and dishonest, and were known by the said defendant to be false and fraudulent when made, and were made for the purpose of and with intent of cheating, defrauding, deceiving and misleading the plaintiff and inducing him to enter into said contract to pay said money, and were made by the defendant with full knowledge of their falsity and with no intent to fulfill the guarantees and agreements so made.'' He alleges that the homes and residence buildings completed and in course of construction in the vicinity of said Lot 6 were not built and being constructed by lot owners for their own homes, nor were they soon to be occupied, but that all those buildings were being constructed for defendant for speculation and many of them are unsold and unoccupied even unto this day. He further alleges ''that said Lot 6 was not worth $5,000 nor any sum whatsoever to this plaintiff who did not sign said contract for the purpose of purchasing and holding said property, but for the sole purpose of having said lot resold by said defendant at a profit as represented.'' He further alleges that he believed all the false and fraudulent representations that were made to him and that he was deceived thereby and that, by reason of his believing therein and not otherwise, he was induced to and did enter into the contract to purchase said parcel of real

property and by said money, and that, if he had known said representations were false prior to the time said contract was entered into, he would not have entered into the same. He then alleges that on the twenty-fourth of June, 1929, soon after he found out that the representations were false and fraudulent, he notified defendant that he elected to rescind the contract and demanded a return of his money which was refused by the defendant.

To this complaint defendant filed its answer amounting to a general denial of any false or fraudulent representations made by defendant, and further alleged that the parties with whom plaintiff dealt in entering into the contract were independent contractors using their own judgment as to the sale of said property, and that at no time did the defendant have any authority to direct or control the said agents' actions, and further alleged that the plaintiff ratified said contract by continuing payments long after he found out about the alleged fraudulent representations.

To this answer plaintiff filed a reply, in effect a general denial and setting up that defendant received the benefits of the false and fraudulent representations, and should now be estopped from denying that they were made in its behalf.

On the trial of the case the court found for defendant and plaintiff appeals, alleging as error that "the lower court erred in holding that after notice of the alleged fraud plaintiff acquiesced in and ratified the contract set forth in his complaint."

The trial court found that whatever fraud may have been practiced on the plaintiff at the inception of the contract, the plaintiff waived such fraud and ratified the contract by continuing to make payments for a

long time after he discovered the fraudulent acts of which he complains. There is ample evidence in the record to support such a finding. The evidence tends to show that he had actual notice. His pleadings allege a state of facts that would put an ordinary layman on notice that the parties who made the alleged promises did not intend to carry them out. In the fall of 1928, plaintiff alleges that Baker, one of the agents, whom he accuses of making some of the fraudulent representations, informed him that suits had been filed in the Circuit Court of Multnomah county against defendant and its selling agents with whom plaintiff dealt, including Mr. Baker himself, relating to promises made by them regarding the sales of lots in the same subdivision. Plaintiff, a lawyer by profession, with an experience of over a quarter of a century at the bar, made no inquiry regarding the suits of which he was advised. The evidence being amply sufficient to support the findings of the trial court, the judgment must be affirmed on the authority of *Holmes v. Burlingame Co.*, see ante p. 193 (6 P. (2d) 44) ; *Cameron v. Edgemont Inv. Co.*, 136 Or. 385 (299 P. 698) ; *Pace v. Edgemont Inv. Co.*, see ante p. 32 (4 P. (2d) 633.)

It is so ordered, neither party to recover costs or disbursements.

BEAN, C. J., BROWN and KELLY, JJ., concur.