Submitted on briefs October 9, affirmed November 20, 1957

# BRAY ET UX *v.* MAIN, TRUSTEE ET AL

318 P. 2d 266

Hugh B. Collins, Medford, and J. Everett Barr, Yreka, California, for appellants.

Neff, Frohnmayer & Lowry, Medford, for respondents.

PER CURIAM.

The plaintiffs, W. J. Bray and Lucille P. Bray, husband and wife, brought this suit against Volney W. Wiggins and Marian V. Wiggins, husband and wife, to foreclose a contract of conditional sale of real and personal property in Jackson County, Oregon. The court entered a decree for the plaintiffs from which the defendants have appealed. Pending the appeal the defendant, Volney W. Wiggins, was adjudicated a bankrupt, and James M. Main, trustee in bankruptcy of his estate, was substituted in his stead as a party defendant. For convenience, however, we will refer to Volney W. Wiggins as a defendant.

The contract in question was executed May 21, 1952. The plaintiffs at the time were co-partners doing business as Midway Auction Company, and used the property covered by the contract in their livestock auction business, trading in cattle and trucking and farm operations. The purchase price was $65,000, of which $63,000 was assigned in the contract as the price of the real property and $2,000 as the price of the personal property. $15,000 was paid at the time of the execution of the contract, and the balance was agreed to be paid as follows: $9,000 on or before January 1, 1953, and annual installments of $5,000 commencing January 1, 1954, and continuing on January 1 of each and every year thereafter until the entire purchase price should be paid. The unpaid balance bore interest at the rate of six per cent per annum. The contract contained a

time-essence clause and other provisions usual in such agreements. There were also the following provisions:

"6. Purchasers covenant to and with the sellers as follows:

"(a) That they will continue to operate a first-class livestock auction business upon the above-described real property not less often than once each week. Purchasers understand that it is important to the value of said property and business that said sales be continued on account of the good will connected therewith. Purchasers shall be excused from holding any sale, however, if the holding of such sale is prevented by an act of God, unusual weather, a holiday, or any other occurrence entirely beyond the control of the purchasers."

"7. *  *  *

"(b) That they [the sellers] will release the assumed name of 'Midway Auction Company,' and that purchasers shall have the right to the use of said name as long as they are not in default in the performance of this agreement. However, upon any such default the purchasers will, at the request of the sellers, promptly take such steps as may be required to release said name so that it can thereafter be used by the sellers.

(c) That the sellers will not own or operate a livestock auction sales yard in Jackson and Josephine Counties, Oregon, for a period of 8 years hereafter. This restriction, however, shall cease if the purchasers shall default in the performance of this agreement. Nothing herein contained shall prevent the sellers, or either of them, from conducting farm auctions, or from acting as an auctioneer or assisting others in the conduct of an auction yard or business as long as they do not have a proprietary interest in such business or yard."

It is not disputed that the defendants failed to make the principal payment of $5,000 which became due in January 1954, and that they allowed the interest to

become delinquent. On January 11, 1954, defendants commenced a suit against the plaintiffs in the Superior Court of the State of California for the County of Del Norte, in which they sought reformation of the contract and a declaration of the rights and duties of the parties thereunder and an injunction restraining plaintiffs from foreclosing their interest in the contract. Plaintiffs commenced this suit on February 16, 1954.

All questions raised on the appeal, except one, relate to affirmative defenses set forth in the defendants' answer. These are briefly as follows:

(1) The provision of the contract above quoted with reference to the right of the plaintiffs to conduct farm auctions, etc., was included in the contract by mutual mistake, or by mistake of the defendants and fraud on the part of the plaintiffs, inasmuch as the parties had agreed that the plaintiffs would not compete with the operation of the auction yard by the defendants for a period of eight years. The plaintiffs, subsequent to the execution of the contract, solicited the customers of defendants' auction yard to do business with other auction yards and sold cattle in competition with the defendants to their damage.

(2) Plaintiffs fraudulently represented to defendants that the business was profitable, that they had made a net profit from the operation of the auction yard of more than $20,000 per year in each of the years 1950 and 1951, that they had been able to start the business and continue its operation without having to invest more than $800 or $900 as capital and no additional capital had been required. In fact plaintiffs had never made a net profit from the operation of the auction yard in excess of $15,000 in any one year, and

defendants had found it necessary to invest at least $7,000 in the business as capital.

(3) A counter-claim, based upon the facts previously alleged, demanded rescission of the contract and restoration of the status quo, and judgment for any financial loss incurred by defendants in the operation of the business.

In addition it is contended that the evidence shows such a gross inadequacy of the consideration received by the defendants that equitable relief will be denied.

PER CURIAM.

We are of the opinion, from our examination of the record, that the case was correctly decided by the court below. Only questions of fact are involved, and nothing is to be gained by a detailed statement of the evidence and the reasons for our conclusion.

■ The evidence shows that the physical properties sold were worth at the time approximately $50,000. This takes no account of the value of the business as a going concern. There is no evidence to support the charge of mutual mistake or mistake on one side and fraud on the other with respect to the inclusion of Paragraph 7 (c) in the contract, and no evidence that plaintiffs violated the covenants thereof. The plaintiff, W. J. Bray, testified that he did state to the defendant, Volney W. Wiggins, that the plaintiffs made $21,000 in 1952 and $19,000 in 1941. This representation referred to all the business operations of the plaintiffs on the premises involved and not merely to the commissions earned from the auction business, and the defendants so understood it. The representation was true. The facts about the alleged representation that the auction yard could be operated without capital in excess of $900 are that, subsequent to the execution

of the contract, not before, when the defendants were endeavoring to secure a modification of the terms of payment, W. J. Bray told Volney W. Wiggins that in 1914, when he and his wife bought out their partners, they had only $500 or $800 in actual cash in bank, and that they started out with that amount and successfully operated the auction yard. This charge of fraud is not sustained.

■ It appears without contradiction that as early as September 1952 the defendants were aware of the facts upon which they based their charges of fraud, but that they continued to operate the business and remained in possession of the property and treated it as their own until January 1954. They thereby chose to affirm the contract and lost any right they might otherwise have had to rescind. *Scott v. Walton,* 32 Or 460, 52 P 180. It is unnecessary to decide whether the commencement of the suit for reformation of the contract and a declaratory judgment in Del Norte County, California, also constituted an irrevocable affirmance. As to that question see *Sheppard v. Blitz,* 177 Or 501 at 510, 163 P2d 519; *Schenck v. State Line Telephone Co.,* 238 NY 308, 144 NE 592, 35 ALR 1149, annotation 1153.

Upon the whole case, it is evident that the charges of fraud are an afterthought, since the defendant, Volney W. Wiggins, admitted on the witness stand that he never complained to the plaintiffs of any misrepresentations concerning the earning capacity of the auction yard until he and his co-defendant filed their answer in this case.

The decree is affirmed.