Argued December 18, 1958, affirmed May 13, 1959

# KELLER *v.* LONSDALE ET UX

339 P. 2d 112

*E. B. Sahlstrom,* Eugene, argued the cause and filed a brief for appellants.

*William M. Keller,* Portland, argued the cause and filed a brief for respondent.

Before PERRY,* Chief Justice, and LUSK, WARNER and SLOAN, Justices.

WARNER, J.

This is a suit by the plaintiff, Keller, to foreclose the interest of the defendants, Lonsdales, as purchasers, under two conditional sales contracts, executed by them in February, 1954. Keller appears herein as the assignee of Max Fleming and K. Reuben Nyberg, co-partners, dba Fleming & Company, the sellers, under said contracts. Each contract was for the sale of ten coin-operated television sets and are identical in terms. The sets were installed for the Lonsdales in two different motels in Eugene where they presently remain in defendants' possession.

* Chief Justice when case was argued.

On motion of the defendants, Lonsdales, the co-partners, Fleming and Nyberg, were made parties as cross-defendants in the Lonsdale's amended complaint.

The Lonsdales were in default in the payments required by the contracts but defend by claiming the right to rescind the contracts because of alleged false representations made to them by one Colburn, a traveling salesman employed by Fleming & Company. They also rely upon a technical defense predicated upon the failure of the Fleming Company to have filed a certificate of Assumed Trade Name in Lane county, in addition to the one previously filed in Multnomah county.

The trial court found no merit in the defendants' several defenses and entered its decree favorable to the plaintiff, Keller, with judgment for the balance due on the contracts, attorney's fees and interest, and for a judgment for any deficiency remaining after the sale of the television units under execution. From this decree, the Lonsdales appeal.

The broad issues are reflected by the following questions:

(1) Is plaintiff barred from his right of action by reason of the Fleming failure to file an assumed trade name certificate in Lane county?;

(2) Is the plaintiff precluded from equitable cognizance in the matter due to the alleged adequacy and claimed election of a legal remedy?; and

(3) Were the Lonsdales entitled to a rescission of the contracts?

■ The defendants' first proposition relates to what they claim was the court's error in striking from their answer the following language:

"* * * and further specifically deny that said parties, or either of them, filed any assumed busi-

ness name certificate in Lane County, Oregon, and by reason thereof, allege that they were not authorized to conduct business in Lane County, Oregon, or to commence this suit in Lane County, Oregon."

Lonsdales admit that the partners comprising Fleming & Company (Keller's assignor), filed an assumed name certificate in Multnomah county, their principal place of business, as required by ORS 648.010.[①] But they assert that because Fleming & Company had failed to file a like certificate in Lane county, where the television sets were sold and installed, Keller's right to institute this suit is fatally impaired thereby.

The undisputed facts are that Fleming's sole place of business is in Multnomah county. It is also uncontradicted that Fleming & Company had no place of business in Lane county, and that the one transaction resulting in the two contracts sought to be foreclosed, was the sole sale or other transaction had by Fleming in Lane county during the year 1954 or for many years prior thereto.

The Lonsdales rely on that part of ORS 648.010, supra, reading: "No person or persons shall carry on, conduct or transact business in this state" until they "file a certificate in the office of the county clerk of

---

[①] ORS 648.010: "No person or persons shall carry on, conduct or transact business in this state under any assumed name or under any designation, name or style, corporate or otherwise, other than the real and true name or names of the person or persons conducting the business or having an interest therein, unless the person or all the persons conducting the business or having an interest therein file a certificate in the office of the county clerk of the county or counties in which the business is to be conducted. The certificate shall set forth the designation, name or style under which the business is to be conducted, and the true and real name of each party conducting or intending to conduct the business. or having an interest therein, together with the postoffice address of each such person. The certificate shall be executed and acknowledged by each party conducting or intending to conduct the business, or having an interest therein, before an officer authorized to take acknowledgment of deeds. The county clerk shall record and index the certificate in a book kept for that purpose."

the county or counties in which the business is to be conducted." In connection with the foregoing, they also rely on ORS 648.090[2] which provides that persons coming within the purview of ORS 648.010 shall not be "entitled to maintain any suit or action * * * without alleging and proving that they have filed a certificate as provided for in ORS 648.010."

We pass the question as to the propriety of raising the matter in their pleading in the manner in which the Lonsdales elected to do, and go directly to their construction of ORS 648.010.

■ We first remind ourselves that the privilege to do business as partners is of common law origin and that the statute under review is in derogation of that right. Therefore, a rule of strict construction is in order when fixing the limits and boundaries of the field in which the Assumed Business Name Act operates. *Uhlmann v. Kin Daw*, 97 Or 681, 692, 193 P 435, an opinion by Mr. Justice HARRIS construing the act now before us. See, also, 38 Am Jur 603, Name § 14.

■ We are of the opinion that a single or isolated transaction within a given county of the state outside the county where the partnership has its principal place of business, does not constitute the carrying on or transacting business in such other counties within the meaning of ORS 648.010, supra, so as to require the filing of a certificate in such county.

In the comparatively recent case of *Bacon v. Gardner*, 38 Wash2d 299, 229 P2d 523 (1951), the court had occasion to construe Rem. Rev. Stat. § 9976 (an

[2] ORS 648.090: "No persons carrying on, conducting or transacting business in the manner described in ORS 648.010, or having any interest therein, are entitled to maintain any suit or action in any of the courts of this state without alleging and providing that they have filed a certificate as provided for in ORS 648.010. Failure to file such certificate is prima facie evidence of fraud in securing credit."

exact counterpart of ORS 648.010) and there declared that "statutes of this character are not directed against isolated transactions, but against a continuing commercial activity." (at p 527) See, also, *Johnson v. Cass & Emerson,* 91 Vt 103, 99 A 633, 634; *Pratt v. York,* 197 Ky 846, 248 SW 492, 495; and *People v. Whiting,* 123 NYS 769, where the several courts construe assumed name statutes which are alike or substantially like our own.

We hold that the trial court did not err in striking the portion of appellants' answer referred to above.

■ By their second proposition, the defendants claim the court was in error in denying their motion to strike all allegations in the complaint relating to equitable relief.

They argue that in the event of a breach of a conditional sales contract, the remedies therein provided are exclusive and that the contract here makes no provision for the remedy which the seller has invoked by suit for a foreclosure. They conclude that plaintiff's only recourse is by an action at law. We think that the contention is without merit for the reasons that follow.

The chief criterion as to the character of such a contract is the intention of the parties as disclosed by the entire contract. *Manley Auto Co. v. Jackson,* 115 Or 396, 399, 237 P 982.

Turning to the contracts, we find the following pertinent terms: the agreement of the sellers to sell and the defendant purchasers to buy, thereby directly obligating the Lonsdales to pay the full purchase price, *Wickwire v. Hanson,* 133 Or 85, 89, 288 P 404; a stipulation for retention of title in the sellers, reading: "The title to said property will be retained by the Seller

and shall not pass to the Purchaser until the sums hereinbefore agreed to be paid shall have been paid in cash, and until the Purchaser shall have performed all things in this agreement on his part required to be performed." In *Manley, supra,* we said: "If the seller treats the title to the property reserved by the conditional sales contract as security for the payment of the price, he may file his bill in equity to obtain a judicial sale." (115 Or at 400) The contract also confers a right in the sellers to accelerate payment of the entire indebtedness upon any default and an obligation on the part of the purchasers to pay any deficiency remaining after sale of the property. By the terms of the contract, the defendant purchasers had the right to possession of the property, together with a beneficial interest therein, so long as the contract was not in default. Such constitute an equitable interest. *McDaniel v. Chiaramonte,* 61 Or 403, 409, 122 P 33; *Richardson v. Bouthillier,* 193 Or 354, 360, 238 P2d 212.

The defendants point to *Bottemiller v. Ball,* 130 Or 255, 264, 279 P 542, as authority for the proposition that when a contract provides remedies in the event of breach, those remedies are "exclusive." A reading of Bottemiller and the cases there cited does not warrant such a sweeping and dogmatic conclusion. Moreover, we do not find that Bottemiller has ever been cited by this court to support such result.

A complete answer to this contention of defendants will be found in *Wickwire v. Hanson, supra.* In Wickwire, plaintiffs were the purchasers and sought to recover amounts previously paid on a conditional sales contract. The defendant seller's answer included a counter-claim in equity, seeking to foreclose the interests of the purchasers. Plaintiffs in that case, as

do the Lonsdales here, insisted on trying the case at law and demanded a jury, which was refused (133 Or 88). That order was one of the issues on appeal and the appellants' contention was rejected.

In Wickwire, the contract was in many respects like the one at bar. It provided for retention of title in the seller until the full amount of the purchase price was paid and for acceleration of the entire amount upon the buyers' default (133 Or at 89).

The sole contractual remedy of the seller on default in the Wickwire case was a right to "retake the possession of the said personal property at her election and without notice to the vendees, and the vendor may further declare the entire amount due under this contract due and payable at once." (133 Or at 89) A comparable provision is found in the Lonsdale's contract, as one of several alternative remedies of the sellers, but, however, coupled with the further provision that upon such seizure the "Seller may resell the said property at public or private sale and apply the proceeds, after deducting expenses, liens, and a reasonable attorney's fee paid or incurred by him, to the payment of said indebtedness, and pay to Purchaser the surplus, if any, or in case of a deficiency, Purchaser agrees to pay Seller the same at once." Neither the Wickwire contract nor the instant contracts carried any specific provision for foreclosure by a suit in equity.

This court, in Wickwire, concluded:

"There is no doubt that plaintiffs [purchasers] breached the contract by refusing to pay the instalments agreed to be paid. Defendant [seller] availed herself of the provision of the contract authorizing her to declare the entire amount of the purchase price due. Defendant was then entitled to resort

to equity by an affirmative answer as a complaint in equity to foreclose the interest of plaintiffs in the property. Plaintiffs accede in their brief that if the contract permitted it, as stated in Mechem on Sales, section 615, the defendant was entitled to foreclose in equity. The contract permits defendant to declare future instalments due if and when plaintiffs defaulted. Defendant is thereby authorized to collect future instalments as well as past due instalments." (133 Or at 90, 91)

Thus, in its controlling and essential aspects, Wickwire is similar to Lonsdale.

The defendants, however, assert that under the fourth remedy available to vendors as laid down by 1 Mechem on Sales, 503, § 615 (and as quoted in *Smith v. Chandler,* 200 Or 205, 208, 263 P2d 764), the plaintiff must necessarily have possession in order to qualify for foreclosure. The Smith case does not warrant such a conclusion.

At best, defendants' proposition is as tenuous as it is novel. The reasoning of the courts, including this one, in allowing foreclosure by suit, has not been dependent upon possession or even the right to possession in the seller, but rests upon the purchaser's direct obligation to pay the purchase price, together with a reservation of title in the seller as security. We find no cases revealing that possession in the seller is a condition precedent to bringing a foreclosure suit, although it may often complement it. Cf. *Manley Auto Co. v. Jackson,* supra (115 Or 396), and where the court said at p 400: "Under a conditional sales contract, recovery of possession is not necessarily the only remedy of such a seller"; *McDaniel v. Chiaramonte,* supra (61 Or 403). The purchasers suffer no loss by continued possession during the pendency

of the suit; to the contrary, it may be said to work to their advantage.

■ If defendants' second proposition was sound, sellers would be subjected to a multiplicity of actions, a proper basis for equitable interference. *Logan v. Equitable Trust Co.,* 145 Or 684, 694, 29 P2d 511 (1934). In other words, the plaintiff would have to obtain possession of the television sets, presumably through replevin, sell them, then sue for any deficiency. A court of equity can dispose of the entire matter at one sitting, including, as here, the defendants' prayer for rescission based upon the alleged false representations of Colburn.

There is yet another reason for approving the course adopted by the plaintiff. It finds expression in *McDaniel v. Chiaramonte,* supra (61 Or at 409), where the court said: "By that course, the equity of the buyer was protected by the conscience of the court and its power of control over the sale." See, also, 3 Jones, Chattel Mortgages and Conditional Sales (Bower's ed) 461, § 1368; Estrich, Instalment Sales, 788, § 396; 47 Am Jur 103, Sales § 895.

As a part of defendants' second proposition they represent that the action of the Citizens Bank of Oswego, while holding the contracts as a mesne assignee, in declaring the unpaid balances due and payable, was in the nature of an election of remedies.

We do not so view it. At the most, it was but a preliminary step necessary to the foreclosure thereafter instituted by the plaintiff, Keller, as a subsequent assignee. See *Wickwire v. Hanson,* supra, where the court said: "Defendant availed herself of the provision of the contract authorizing her to declare the entire amount of the purchase price due. Defendant

was then entitled to resort to equity by an affirmative answer as a complaint in equity to foreclose the interest of plaintiffs in the property." (133 Or at 90)

The defendants' third proposition is an objection to the court's refusal to grant their motion, made at time of trial, to transfer the case to the law side of the court and to empanel a jury to hear the matter.

We have above held that plaintiff's complaint discloses a matter of equitable cognizance; that is, the right to foreclose a lien against personal property. ORS 88.010; *Brown v. Truax,* 58 Or 572, 575, 115 P 597. As we have observed, the Lonsdales by their answer and cross-complaint seek a rescission of the contracts.

■ Where the pleadings show that both parties ask for equitable relief and the court has jurisdiction to grant the relief prayed for in the complaint and answer, it becomes the duty of equity to retain jurisdiction and decide on the merits. *Hudson v. Goldberg,* 123 Or 339, 342, 262 P 223; *Ruby v. West Coast Lbr. Co.,* 139 Or 388, 393, 10 P2d 358; *Glaser v. Slate Const. Co.,* 196 Or 625, 631, 251 P2d 441; *Barnes v. Eastern & Western Lbr. Co.,* 205 Or 553, 612, 287 P2d 929; *Bowsman v. Anderson,* 62 Or 431, 436, 123 P 1092, 125 P 270.

■ The fourth proposition of the defendant Lonsdales rests upon the court's failure to grant a rescission of the contracts in response to the prayer of their cross-complaint.

Their right to rescind rests on three alleged misrepresentations made to the purchasers by the salesman Colburn while in the employ of Fleming & Company.

Colburn was the first representative of that organization to make contact with the Lonsdales in Eugene

early in January, 1954. They claim: (1) that the installation of the television sets was to insure reception for Portland station KOIN-TV; (2) that convenient financing for a total of 50 sets, or 30 additional sets, would be arranged through the Citizens Bank of Oswego; and (3) that Colburn guaranteed that the proposed business venture of placing the coin-operated television sets in motels for the amusement of patrons would bring a 100 per cent return in two years time and, in addition, that they could obtain an insurance policy to that effect.

After a careful examination of the entire record, we find ourselves in complete accord with the able trial judge's estimate of the entire transaction. It was his conclusion and ours that the defendants entered into an improvident business deal and that reliance upon Colburn's statements was neither warranted nor made.

We find it unnecessary to expand our reasons for these conclusions in view of the fact that even if we assume that defendants' claims concerning the alleged false representations of Colburn have merit, and further assume that defendants had relied thereon, to their damage, their present assertion of a right to rescission comes too late.

The contracts are dated February 8, 1954. The Eugene television station came on the air April 15, 1954, when the defendants commenced operation of the sets in the two motels and thenceforth continued collection of the proceeds. On and before April 15, they knew that the sets were installed to receive the Eugene station only. Before they closed the transaction for the 20 sets or had paid any money thereon, they also knew that the Oswego bank would not finance the purchase of more than the 20 sets they agreed to pay for, and they also had knowledge before

closing their deal with Fleming & Company that there was no such thing as income insurance, and that the sellers had not and would not guarantee the profits of their enterprise. After April 15, they made a payment on each of the contracts. In September, 1954, when the bank president called them regarding delinquent payments, Mr. Lonsdale's response was merely to complain that collections from the sets had not come up to expectations. On October 8 when the same bank officer called him again, Mr. Lonsdale promised to send $500 to apply on the contracts. Neither time did Lonsdale complain about any misrepresentation by Colburn. As late as January 27, 1955, the defendants made positive assertions of ownership by filing an insurance claim for a stolen unit.

The first hint of rescission appears in their original answer, filed May 24, 1955. In the intervening 15 months between the execution of the contracts and this suit, defendants necessarily had knowledge of the doubtful verity of every one of Colburn's alleged false representations, but made no demand for rescission. Their late demand for rescission appears to be the afterthought of an improvident contract and a resultant unprofitable business venture.

The overall posture of the instant circumstances renders apt the forewarning of Mr. Justice ROBERT S. BEAN, made in *Scott v. Walton,* 32 Or 460, 52 P 180, at p 464:

> "* * * If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract,

and dealing with it as his own, will be evidence of his intention to abide by the contract: * * *."

Our continued adherence to that rule is exemplified by the following cases: *Holmes v. Burlingame Co.,* 138 Or 193, 198, 6 P2d 44; *Pace v. Edgemont Investment Co.,* 138 Or 32, 38, 4 P2d 633 (1931); *McCabe v. Kelleher,* 90 Or 45, 51, 175 P 608; *Amort v. Tupper,* 204 Or 279, 285, 282 P2d 660; *Bray v. Main,* 212 Or 61, 66, 318 P2d 266.

■ By their fifth and last proposition the Lonsdales contend that the court should have refused to have exercised its equity jurisdiction. It is repetitious of arguments advanced and considered under several of their earlier propositions. They add, however, as a further reason the suggestion that plaintiff and his assignors did not come into equity with clean hands and, therefore, are not entitled to equitable relief. We find no merit in this argument.

■ At the conclusion of his answering brief, the plaintiff asks us to make an allowance of a reasonable sum for attorney's fees in this court as did the circuit court for attorney's services there. In the absence of precedent, legislative sanction, or a contractual stipulation contemplating such an allowance on appeal, the request will be denied.

The decree of the circuit court is affirmed. Each party to pay their own costs.