Argued December 7, reversed December 21, 1960, petition for
rehearing denied January 17, 1961

## KARN ET UX *v.* PIDCOCK ET UX
357 P. 2d 509

*William T. Hollen,* Newport, argued the cause for the appellants. On the brief was Adams & Hollen, Newport.

*Robert A. DeArmond* and *Elmer M. Amundson,* Salem, argued the cause for respondents. With Elmer M. Amundson on the brief were DeArmond and Sherman, Salem.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and King, Justices.

KING, J. (Pro Tempore)

This is an appeal by the defendants Thomas Pidcock and Pearl A. Pidcock, husband and wife, from a decree ordering strict foreclosure of a contract and denying their request for rescission for alleged fraudulent representations.

The defendants Thomas Pidcock and Pearl A. Pidcock were the owners of certain farm and ranch property between Rainier and Clatskanie, Oregon.

The defendants Robert E. Sullivan and Marjorie Sullivan, husband and wife, were the owners of what was known as the Channel Apartments and a part of

Block "A", Breaker's Addition to Depoe Bay, Lincoln County, Oregon.

The Sullivans had traded for the Depoe Bay property in February, 1957, and had listed it for sale with various real estate agencies, including the Cal Martin Agency of Newport, Oregon.

Phillip Bussard was one of the real estate salesmen employed by the Cal Martin Agency and it is admitted by the Sullivans that he was acting as their agent in the sale and transfer of the Channel Apartments to the defendants Mr. and Mrs. Pidcock.

During the month of June, 1957, Phillip Bussard showed the property to the Pidcocks and arranged for its purchase by them from the Sullivans. The total purchase price was to be $15,000. Of this amount, their ranch near Clatskanie was turned in as a down payment of $6,570 and the balance of $8,430 was to bear interest at the rate of 6% and was to be paid at the rate of $76 each month beginning August 16, 1957, to be applied on interest first and the balance on the principal. The Pidcocks went into possession of the premises on July 16, 1957.

After having made three payments on the contract, Mr. Pidcock heard a rumor and became suspicious that the building designated as Channel Apartments was not located entirely on the tract of real property covered by the contract and that the land was not as extensive as he had been shown and thought he had purchased.

He immediately started to investigate. He secured the services of an attorney, made a trip to and conversed with the Oregon Real Estate Commissioner in Portland; and, through his attorney, notified Mr. and Mrs. Sullivan in Salem that no further payments would be made on the contract until the matter was straight-

ened out and the defects cleared up. This letter was mailed on December 10, 1957. On the same date the Cal Martin Agency notified Mr. Sullivan by letter that Mr. Pidcock claimed that the property was misrepresented to him.

At this point it might be noted that Mr. and Mrs. Sullivan had transferred the contract from the Pidcocks to Mr. and Mrs. C. F. Karn of Salem, Oregon. Mr. Pidcock was not notified of this transfer until January, 1958, although the transfer is dated December 4, 1957. He did know that Mr. and Mrs. Karn were considering the purchase as they had looked at the property in November, 1957.

Mr. Pidcock employed the County Surveyor of Lincoln County to run the lines and establish the corners on the property for him. He was unable to get these services performed until February 6, 1958. Mr. Burdette, the surveyor, found that the building overlaps the real property line 2/10 of a foot at the southwest corner. There is an overlap of 1-2/10 feet on the northeast corner. The entire west end of the building and balcony extends 6-3/10 feet over the property line. This was the first positive information that Mr. Pidcock had that the building was not entirely on the lot and, in fact, was larger than the lot.

In January, 1958, Mr. Pidcock, after learning that Mr. Karn had purchased the contract, made a trip to Salem and explained the situation to him. Immediately after receiving the survey, he again returned to Salem and showed the map to Mr. Karn and told him "* * * he wanted no further part of the property * * *."

Later, correspondence was carried on between the attorneys for Mr. Pidcock and Mr. Karn in addition to the conversations between the parties themselves

on the general subject of getting their money back from Mr. Sullivan. There was also some correspondence with Mr. Sullivan's attorney.

On April 4, 1958, these negotiations were broken off by Mr. Karn's attorney who demanded payments on the contract by the 16th of April or strict foreclosure would be started. Such a suit was actually filed on May 8, 1958. The defendants Pidcock answered and alleged fraud and asked for a rescission of the contract. The trial court, on the motion of the plaintiffs, Mr. and Mrs. Karn, ordered that Mr. and Mrs. Sullivan be made parties defendant to the suit.

The question to be determined in this case is: Are the Pidcocks entitled to a rescission of the contract under their answer and cross-complaint? If they are and rescission is granted, that would end the case. If they are not, then the plaintiffs' claim for strict foreclosure would be determined.

■ In determining whether a rescission should be granted, the rule in Oregon was first established by Mr. Justice BEAN in *Scott v. Walton,* 32 Or 460, 464, 52 P 180, in these words:

> "A party who has been induced to enter into a contract by fraud, has, upon its discovery, an election of remedies. He may either affirm the contract, and sue for damages, or disaffirm it, and be reinstated in the position in which he was before it was consummated. These remedies, however, are *not concurrent, but wholly inconsistent.* The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract."

This general rule has been approved and applied in many Oregon cases since *Scott v. Walton,* supra, was decided. *Ross v. Carlyle et ux.,* 216 Or 576, 339

P2d 1114; *Brown et ux. v. Hassenstab et ux.*, 212 Or 246, 319 P2d 929; *Belanger v. Howard,* 166 Or 408, 112 P2d 1022.

■ Another rule which has become firmly established in Oregon is that a material misrepresentation, although innocently made, may be grounds for rescission. Even though the party making representations believed them to be true, or lacked knowledge of their falsity, the discovery of the truth could give a right of rescission. *Brown et ux. v. Hassenstab et ux.,* supra; *Weiss and Hamilton v. Gumbert,* 191 Or 119, 227 P2d 812, 228 P2d 800; *Sharkey v. Burlingame Co.,* 131 Or 185, 282 P 546.

As mentioned before, the defendants Sullivan admit that Phillip Bussard was acting as their agent in the transaction of selling or trading the Depoe Bay property to the Pidcocks. Mr. Pidcock testified positively that Mr. Bussard pointed out the lines of the property to him. As an example, Mr. Pidcock testified Mr. Bussard told him:

"On the north there about 12 or 13 feet north of the channel apartments [sic] there is some boards that is laying across the street and there is a lawn on one side of it and graveled on the other. He told me that property line went approximately there where that little street there was at. There was at one time a stake there. The stage [sic] is gone now. There was a stage [sic] there about six or eight inches high, an old stake, and took into consideration that was the line there right where those two by sixes is across the street."

"We seen, he said that is where the line was."

On cross examination Mr. Pidcock, among other things, testified as follows:

"He said the north line was 12 or 13 feet north of the property and was where those boards crosses

the street there. There is gravel on one side and then there is lawn on the other."

In reply to the question: "Now the West line of the property would you tell us what Mr. Bussard said about that specifically?" he answered: "He said it went to the ocean." He had explained he understood that meant the bluff or high water mark.

Mr. Pidcock also gave similar testimony regarding the representations as to the south line of the property as pointed out to him. He was confirmed in his statements, in general, by his wife, Mrs. Pidcock. We will not quote their testimony further in this matter.

The defendants offered the testimony of Phillip Bussard and some of his statements on direct examination are as follows:

"A Mr. Pidcock asked me where the lines on the property were and I had no knowledge where they were. I told him that at the time.

"Q What did you say?

"A I said I don't know where the lines are because it doesn't show on the listing but from Mr. Pidcock's testimony we did see a post on the northeast corner there of the property and he asked me if that was a corner post and I repeated that I did not know but it could have been."

On cross examination regarding the same matter, Mr. Bussard said:

"A We discussed it. I probably said, it probably could be a stake. To my knowledge it isn't because I don't know what the lines are.
"* * * * *

"A I was asked if it was a surveyor's stake. I may have said it could be.
"* * * * *

"A It's been a long time ago. I could be mistaken in what I actually said."

■ We have quoted only brief parts of the testimony but we believe, whether intentionally or not, the Pidcocks were led to believe that the building they were purchasing was well within the property lines and that those lines were misrepresented to them.

There was also substantial testimony that would indicate that Mr. Sullivan, at least, had good reason to believe that the Channel Apartment building did overlap the real property lines before he traded it to the Pidcocks. He, however, did not personally talk to or make any representations to them regarding the lines and denied that he knew of any overlapping.

The defendants Pidcock were not familiar with the area. They had almost no experience in real estate or contract transactions. On the other hand, Mr. Sullivan was an experienced real estate dealer, quite familiar with the area, and, of course, his representatives, the Cal Martin Agency and Mr. Bussard, were experienced in real estate transactions and should have been very careful in any representations made or inferences to be drawn from their answers to questions. The evidence does not disclose the occupation of Mr. Karn, the plaintiff, except that he had some experience with contracts.

We also find that the defendants Pidcock offered and requested rescission of the contract promptly on the discovery of the misrepresentation and the discovery of the true boundaries of the property. In fact, they complained to everybody connected with the transaction as soon as they had good reason to suspect that the property was not what they were led to believe it was. It is true they have remained on the premises but there is no evidence that they have attempted to do anything other than preserve and protect the property, and this apparently is not seriously disputed.

■ The defendants Pidcock have offered some evidence of permanent repairs to the premises and rather fragmentary evidence of their income from the premises. Their amended answer and cross-complaint filed February 17, 1959, does not allege or ask for any refund except the down payment and three monthly payments made. They moved during the trial to amend their cross-complaint in that regard, and the motion was allowed, however, there is nothing to show what was alleged in the proposed amendments. There are a few pages inserted in the Circuit Court file of pleadings but no title, no filing mark or date, and the certification shows a date of February 15, 1959, which is before the amended answer was filed. In their brief on appeal they make no claim for any permanent improvements.

Under such a situation, this court will not make any allowance for permanent improvements or for rental or use of either the Channel Apartments or the ranch property traded in as a down payment. Such matters should have been properly raised and submitted by either of the parties if they wished them considered by the court. Likely, the parties and their attorneys felt that when balanced off, they would not amount to much.

We hold that the defendants Thomas Pidcock and Pearl A. Pidcock are entitled to rescission of the contract in this case and that the defendants Robert E. Sullivan and Marjorie Sullivan should return to the Pidcocks the farm property received by them as a down payment, with the same encumbrances, if any, as when received, or, in lieu thereof, if return of the farm property cannot be made immediately, that Thomas Pidcock and Pearl A. Pidcock have and recover judgment from Robert E. Sullivan and Marjorie Sullivan for

the sum of $6,798; and that said judgment be enforced against the real and personal property described in the contract of sale between the parties to the Depoe Bay property.

We do not pass on any rights or claims as between the plaintiffs, C. F. Karn and Hazel E. Karn, and the defendants Robert E. Sullivan and Marjorie Sullivan as they were not litigated in this case.

The decree of the Circuit Court ordering strict foreclosure is set aside and the case remanded for judgment and decree in accordance herewith.

Reversed.