Argued November 6, 1973, modified February 14, 1974

PICKINPAUGH ET UX, *Respondents, v.*
MORTON, *Appellant.*
519 P2d 91

*George G. VanNatta,* St. Helens, argued the cause for appellant. On the brief were VanNatta & Petersen, St. Helens.

*R. William Riggs,* Portland, argued the cause for

respondents. With him on the brief were Willner, Bennett, Meyers, Riggs & Skarstad, Portland.

BRYSON, J.

Plaintiffs brought this suit to rescind an agreement to purchase real property. On September 9, 1971, plaintiffs agreed in writing to purchase from defendant an unfinished house and lot in the city of St. Helens, Oregon. The defendant agreed to complete construction of the house. The contract also provided:

> "In any suit or action brought on this contract, the prevailing party shall be entitled to recover reasonable attorney's fees to be fixed by the court."

On September 22, 1972, plaintiffs filed their complaint seeking rescission of the agreement, alleging fraud, breach of warranty, and breach of contract. The prayer of the complaint included a request for reasonable attorney fees. The court decreed rescission of the contract and awarded $1,800 to plaintiffs as reasonable attorney fees. Defendant appeals.

In the first assignment of error defendant asserts that the trial court erred in granting a default judgment in favor of plaintiffs. The record demonstrates that during the early stages of the case the trial court granted a default judgment against defendant when he failed to appear within the time fixed by law, following personal service. Four days after the hearing on the order of default and judgment (October 20, 1972), but one day before the order and judgment was signed by the court (October 25, 1972), defendant filed a motion to strike and to make various allegations in the complaint more definite and certain. The court subsequently vacated the default judgment

12

and permitted the case to proceed to judgment following a full trial on the merits. Notwithstanding the ultimate disposition of the case, defendant suggests that the entry of the default judgment "precluded defendant from demurring to the Complaint and from getting rulings on his motions."

■■ In his brief, defendant suggests that as a condition to the revocation of the order of default judgment, defendant was "required to waive our motions and our right to demur, and tender an answer along with a motion to vacate the default." We find nothing in the record or in the trial court file that such a condition was imposed by the court. Moreover, assuming that defendant's assertion is true, defendant's brief fails to demonstrate that favorable rulings on his motions would have produced a different result in the case. The only defect in plaintiffs' pleading which, according to defendant's brief, could have been raised by a demurrer is that the complaint does not state facts sufficient to constitute a cause of suit. Contrary to defendant's contentions, this deficiency could have been raised either at trial or on appeal. ORS 16.330, 16.340. In fact, defendant raises this very question under an assignment of error which we subsequently consider. Conceivably, a trial court could overstep the bounds of due process by attaching arbitrary conditions and requirements to the retraction of an order of default judgment, but we see no reversible error in the procedure followed by the trial court in this case.

■ Defendant also contends that plaintiffs' complaint "does not state a cause of suit for rescission" because "the plaintiffs waited nearly a year before filing suit but pleaded no facts explaining the delay."

We conclude that there was no delay on the

part of plaintiffs and that they acted promptly. The parties signed the earnest money agreement on September 9, 1971, and plaintiffs moved into the house on October 15, 1971. Shortly thereafter plaintiffs notified the defendant and his agent, Mrs. Whalen, of their dissatisfaction and of numerous defects in construction and of defendant's failure to complete the house as provided in the agreement. Mrs. Whalen, defendant's real estate agent, also notified defendant of the defects that were to be taken care of. She testified:

"A   Well, I contacted him many times. It was hard to reach him.

"* * * * *.

"A   * * * He didn't try hard enough."

In "December of 1971 or early '72" the plaintiffs asked the defendant to take the house back but nothing materialized. Plaintiffs filed this suit seeking rescission on September 22, 1972, approximately 11 months after moving into the house. In support of this contention, defendant argues that "delay in bringing the suit is fatal to recovery," relying principally upon *Karn et ux v. Pidcock et ux,* 225 Or 406, 410, 357 P2d 509 (1961) ; *Ross v. Carlyle et ux,* 216 Or 576, 578, 339 P2d 1114 (1959) ; *Keller v. Lonsdale et ux,* 216 Or 339, 352, 339 P2d 112 (1959). Each of these cases involve rescission based upon false representations and the decision in each case is grounded upon Mr. Justice ROBERT S. BEAN's opinion in *Scott v. Walton,* 32 Or 460, 464, 52 P 180 (1898), which states:

"A party who has been induced to enter into a contract by fraud, has, upon its discovery, an election of remedies. He may either affirm the contract, and sue for damages, or disaffirm it, and be reinstated in the position in which he was before it was consummated. These remedies, however, are

not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, * * *."

Based on the facts of this case, it would appear that the plaintiffs acted promptly in giving notice and bringing suit. *See Brown et ux v. Hassenstab et ux,* 212 Or 246, 256, 319 P2d 929 (1957), and 5 Pomeroy on Equity Jurisprudence (2d ed) 4765, § 2110.

■ The defendant next challenges the sufficiency of the evidence to support the decree of the trial court. We agree with the trial court's findings. The record amply proves "[t]hat defendant failed to complete the home in a good and workmanlike manner and that the defects resulting were of a substantial nature. * * *" The trial judge viewed the premises and his findings were based on the testimony of Mrs. Pickinpaugh and Mrs. Merle Whalen, the defendant's agent and real estate broker.

Mrs. Pickinpaugh testified to the existence of numerous defects in the construction of the house, including faulty electrical outlets, cracked baseboard moldings, unstable floors, an uneven and improperly hung closet door, a defective heating system which caused the walls to overheat and discolor, a cracked bathtub, faulty bathroom plumbing causing the floor and walls to mildew and discolor, poorly finished concrete work around the bathroom fixtures, unsatisfactory paint work both inside and out, an ill-fitting oven door, a failure to install a range hood over the kitchen stove, a buckling and sagging garage ceiling, holes in the garage foundation, an ill-fitting garage door, poor exterior carpentry causing boards to crack and pull away from the house, and a lack of exterior water faucets. She also testified that the drains and

plumbing under the kitchen sink had to be completely replaced and that the sewer line for the house had broken. Numerous pictures of the house, detailing construction defects, were received in evidence.

Mrs. Merle Whalen, a real estate broker, testified that she had handled many home transactions in this area; that she was acquainted with defendant Morton and "had sold properties to him and had sold properties for him." She further testified that the carpet installed in the home was "absolutely a mismatch right in the middle of their living room" and that the window in the garage was broken. She corroborated Mrs. Pickinpaugh's testimony that defendant failed to install a range hood over the oven and that the oven door did not fit. She stated that "[i]n its present condition it [the house] would be a bit difficult to sell."

The trial judge stated, "I do not feel that the house is constructed in a good and workmanlike manner" and commented on the defects which he had observed, including the faulty construction and plumbing in the bathroom, the faulty ventilation of the range, the ill-fitting oven door, and the poor exterior carpentry.

In our opinion, the defects described in the evidence and exhibits, when considered as a whole, prove that defendant failed to complete the house in a good and workmanlike manner; the totality of the defects is of a substantial nature.

■ The trial court awarded plaintiffs attorney's fees in the sum of $1,800. The defendant appeals from this portion of the decree. Generally, attorney fees are not allowable to the prevailing party in litigation unless based on a statute or agreement expressly authorizing attorney fees in addition to costs. *Draper v.*

*Mullennex et al,* 225 Or 267, 271, 357 P2d 519 (1960); *Hollopeter v. Oregon Mutual Ins.,* 255 Or 73, 75, 464 P2d 316 (1970). Here the award was based solely on the provision in the agreement of the parties which authorized recovery of attorney's fees in "any action or suit brought on this contract. * * *" In *Hughes v. Bembry,* 256 Or 172, 177, 470 P2d 151 (1970), the defendants claimed the trial court erred "in not awarding them attorney fees." Even though the litigation grew out of the lease, we held:

"* * * The plaintiff was not attempting to enforce the lease which provided that the balance of the purchase price should be paid by permitting occupancy by payment of only a part of the rental. The plaintiff was attempting to collect the unpaid balance of the purchase price for the sale of the building.

"We have adopted a narrow policy on the allowance of attorney fees and held that they will not be allowed unless expressly authorized by a statute or a contract. * * *"

Plaintiffs cite only *Gilbert v. Hoisting & Port. Engrs.,* 237 Or 130, 384 P2d 136, 390 P2d 320 (1964), in support of their position that the trial court's award of attorney's fees should be affirmed. In *Gilbert,* plaintiffs, as representatives of all the members of the local union, brought a suit in equity for the appointment of a receiver, an accounting, and other relief. We stated:

"* * * Equity may under some circumstances as a part of its inherent equitable powers award attorneys' fees. This power is frequently exercised where the plaintiff brings a representative suit on behalf of other members of an organization, as for example where a stockholder brings a derivative suit against a corporation.

"* * * Those members of the union who in

good faith seek to preserve the internal democracy of their union should not have to bear the expense of a successful suit. * * *" 237 Or at 137-38.

■ We have found no cases in which attorney fees, based on the contract, have been allowed to a successful party seeking rescission of the contract and none have been cited to us. An elementary rule of equity provides that when a contracting party learns of facts which render the subject transaction voidable, he may elect either to affirm the contract and sue for damages or disaffirm and be reinstated in the position in which he was before he contracted. This has been the rule in Oregon since 1898. *Scott v. Walton, supra.*

"* * * If he elects to rescind, he can apply to a court of equity for relief; if he affirms, he must look to his remedy at law; but his election of either course must go to the whole contract and not to part of it only. In other words, he must rescind in toto, * * * or not at all. * * * And it follows further from the rule that a contract must be rescinded as a whole that, where this is done, the terms of the abrogated contract have no influence whatever upon the subsequent determination of the rights of the parties or the adjustment of matters growing out of it, but these must be settled in accordance with the principles of equity." 3 H. Black, Rescission and Cancellation § 583 at 1429-31 (1916).

See also, 12 Williston on Contracts § 1464 (3d ed 1970).

■■ According to the above rules, plaintiffs' election to rescind the purchase agreement cancelled all of plaintiffs' contractual rights to the benefits of the contract, including an award of attorney's fees in the event of litigation. A contrary holding would allow plaintiffs to insist on defendant's performance of the contract insofar as the performance benefits plaintiffs, while avoiding those aspects of the contract which are burdensome to plaintiffs. Since the agreement con-

cerning attorney fees is not separable from the contract in question or supported by independent consideration, plaintiffs cannot rescind the contract in part and at the same time affirm it in part. See Black, *supra,* §§ 584-85.

The decree of the trial court is modified to exclude the award of $1,800 as attorney's fees. In all other respects the decree is affirmed The case is remanded to the trial court to enter judgment accordingly.

Modified.

O'CONNELL, C. J., dissenting in part.

I dissent from that part of the majority opinion which holds that plaintiffs are not entitled to recover attorney's fees.

I am willing to concede that plaintiffs must rest their claim upon the provision in the contract providing as follows: "In any suit or action brought on this contract the prevailing party shall be entitled to recover reasonable attorney's fees to be fixed by the court."

The majority denies plaintiffs' recovery on the ground that the rescission of the contract vitiated the entire contract, including the provision for attorney's fees.

Although this makes a nice symmetrical, logical construct, it does not make any sense in the real world in which people make bargains. The parties certainly must have intended that the person violating the terms of the contract would have to pay attorney's fees in case it was necessary to bring a lawsuit, whether the suit took one form or another. Despite this apparent intent, the majority's decision results in denying attorney's fees if the suit takes the form of rescission

while allowing them if the suit is for specific performance or damages. If this does not appear unreasonable on its face, it can easily be demonstrated how it might well be in fact. Thus, plaintiffs' remedy by way of specific performance or damages may not give him the relief he needs and deserves and consequently he seeks rescission. According to the principal opinion, he must do so at the cost of giving up any claim to attorney's fees. This is obviously the wrong conclusion.

If the game of logic must be played to win for plaintiffs, it can readily be done simply by recognizing an exception to the whole or nothing rule of rescission adopted by the majority. The exception can be found in the same authority relied upon by the majority. In Black, A Treatise on the Rescission of Contracts § 589, 1437 (2d ed 1929), it is observed:

> "* * * [T]he more reasonable doctrine now generally prevails that a partial rescission may be ordered if that is the only way in which complete justice can be executed as between the parties."

Then, too, we could treat the provision for attorney's fees as separable from the other provisions of the contract, which would then make applicable the following rule (also taken from Black, at § 585, 1433):

> "When a contract is separable or divisible into a number of elements or transactions, each of which is so far independent of the others that it might stand or fall by itself, and good cause exists as to one of such parties, it may be rescinded and the remainder of the contract affirmed * * *. The usual test of severability of a contract is the entirety or divisibility of the consideration."

Thus both the symmetry of logic and the ends of justice would be served.

HOLMAN and HOWELL, JJ., join in this opinion.