2004 WY 151

Cheryl CASTLEBERRY, as personal representative of the Estate of Billie Garner, Appellant (Defendant/Counter–Claimant/ Third–Party Plaintiff),

v.

Tom PHELAN and Yvonne Phelan, Appellees (Plaintiffs),

and

Kathleen Mordhorst and Randy Mordhorst, Appellees (Third–Party Defendants).

No. 03–218.

Supreme Court of Wyoming.

Dec. 1, 2004.

Representing Appellant Cheryl Castleberry: Kate M. Fox and Clint A. Langer of Davis & Cannon, Cheyenne, Wyoming.

Representing Appellees Tom Phelan and Yvonne Phelan: James R. Salisbury of Riske & Arnold, P.C., Cheyenne, Wyoming.

Representing Appellees Kathleen Mordhorst and Randy Mordhorst: No appearance.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Cheryl Castleberry, as personal representative of the Estate of Billie Garner, appeals from the district court's order denying her claim for attorneys' fees. We conclude that Castleberry is entitled to attorneys' fees under the relevant contractual language and, therefore, reverse and remand.

## ISSUE

[¶ 2] Castleberry articulates a single issue on appeal:

1. When a contract provides for recovery of attorney's fees to the successful party, and the defending party has successfully contended that the other party's rights under the contract have been terminated by reason of the other party's default, should the successful party be awarded its fees?

Appellees Tom and Yvonne Phelan phrase the issue as follows:

I. Whether the District Court properly determined that the contractual provision providing for an award of attorneys' fees did not survive the voluntary termination of the Contract for Deed.

## FACTS

[¶ 3] The underlying facts of this case are undisputed. In 1992, Charles and Billie Garner and Randy and Kathleen Mordhorst en-

tered into a contract for deed on real property in Cheyenne.[1] The parties referred to the contract for deed as the "Garner Contract." The Mordhorsts made payments for the first several years of the Garner Contract, but in 1998 and 1999 their payments became intermittent and finally ceased altogether after September 1999.

[¶ 4] Both of the Garners passed away, and Castleberry was appointed as the personal representative of the Estate of Billie Garner. Castleberry discovered that the Mordhorsts were not making payments on the Garner Contract and notified them of their default on January 23 and 24, 2002. In accordance with the terms of the Garner Contract, Castleberry informed the Mordhorsts that they had thirty days to cure the default. On January 28, 2002, the Mordhorsts entered into a contract to sell the property to Yvonne Phelan.

[¶ 5] On February 29, 2002, more than thirty days after the default notice, the Mordhorsts tendered a $13,680.46 payment to Castleberry. This payment was $7,117.10 less than the amount required to cure the default. Castleberry rejected the Mordhorsts' attempt to cure, took possession of the property, and recorded a quitclaim deed conveying the property back to the estate. On November 25, 2002, the Mordhorsts attempted to assign their interests in the Garner Contract to the Phelans. They did not, however, obtain Castleberry's consent for the assignment as required by the Garner Contract.

[¶ 6] The Phelans then initiated a lawsuit against Castleberry, alleging breach of the Garner Contract and seeking specific performance of the contract and attorneys' fees. Castleberry filed a counterclaim against the Phelans and a third-party complaint against the Mordhorsts, seeking to quiet title to the real property and requesting attorneys' fees. The district court granted a summary judgment in favor of Castleberry on her quiet title claim. The district court specifically found that the Mordhorsts breached the Garner Contract by failing to make the payments in a timely manner and failing to cure their default after notice. The district court

held, however, that Castleberry was not entitled to attorneys' fees because she terminated the Garner Contract after the Mordhorsts defaulted and "[t]he provision for attorney's fees does not survive the termination of the Garner Contract."

[¶ 7] The Phelans initially appealed the district court's decision but later voluntarily dismissed their appeal. Castleberry filed a cross-appeal of the district court's ruling on the attorneys' fees issue, and that appeal is still pending before this Court.

## STANDARD OF REVIEW

[¶ 8] Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Owsley v. Robinson,* 2003 WY 33, ¶ 7, 65 P.3d 374, ¶ 7 (Wyo.2003). *See also* W.R.C.P. 56(c). This Court considers the record in the perspective most favorable to the party opposing the motion and gives that party the benefit of all the favorable inferences which may be fairly drawn from the record. *Hasvold v. Park Cty. Sch. Dist. No. 6,* 2002 WY 65, ¶ 11, 45 P.3d 635, ¶ 11 (Wyo.2002); *Anderson v. Solvay Minerals, Inc.,* 3 P.3d 236, 238 (Wyo. 2000). We review questions of law *de novo* without giving any deference to the district court's determinations. *Hasvold,* ¶ 11.

## DISCUSSION

[¶ 9] Castleberry claims that the district court erred as a matter of law in determining that she was not entitled to recover attorneys' fees under the fee-shifting provision of the Garner Contract. Wyoming has consistently followed the American Rule regarding attorney's fees. Under the American Rule, "each party is generally responsible for his own attorneys' fees. A prevailing party may, however, be reimbursed for his attorneys' fees when express statutory or contractual authorization exists for such an award." *Cline v. Rocky Mountain, Inc.,* 998 P.2d 946, 949 (Wyo.2000) (citation omitted). *See also Dewey v. Wentland,* 2002 WY 2, ¶ 50, 38 P.3d 402, ¶ 50 (Wyo.2002).

---

1. The Mordhorsts did not participate in this liti-      gation in the district court or upon appeal.

[¶ 10] The Garner Contract offered the following remedies in the event of the buyers' default:

> In case the BUYERS shall refuse, neglect, or fail to pay the said purchase money or interest or money advanced or to keep or perform any other agreement or provisions herein contained, the SELLERS may elect to terminate this CONTRACT and shall thereupon be released from all obligations in law or equity to convey said property and the BUYERS shall, in the event of such election by SELLERS, forfeit all right, title and interest and estate in and to any and all payments made by BUYERS pursuant to this CONTRACT, and to said land and all improvements now on said land and all such other improvements as may thereafter be placed on said land, including any structures, and fixtures.... In the event of such election by SELLERS, BUYERS shall always remain liable to SELLERS for the reasona[bl]e rental value of the premises for any period during which BUYERS or its tenants occupy the premises after default. SELLERS may, however, in the event of default of BUYERS, elect to affirm this CONTRACT and pursue any remedy they may have at law or in equity by reason of such default.
>
> The BUYERS shall be entitled to possession and use of said premises on the 11th day of February, 1992, and thereafter so long and only so long as the BUYERS shall perform and comply with the terms and conditions of this CONTRACT FOR DEED. However, in the event of the BUYERS' failure to perform and comply with the terms hereof and SELLERS' election to terminate, the BUYERS shall immediately surrender possession of said premises to SELLERS to whom in such event there is reserved the right to take immediate possession of said property, and to regard the person or persons in possession or occupancy at the time of such termination of this CONTRACT as tenant or tenants holding over without permission, and thereafter to receive rents arising from said premises and to recover any damages committed or suffered on said premises and to re-enter said premises or

any part thereof, either with or without process of law or notice or demand, and repossess and enjoy the same as was their right prior to the execution of the CONTRACT.

The attorney's fees provision of the Garner Contract stated:

> It is further understood and agreed that in case of suit, foreclosure or other litigation arising out of any breach of this CONTRACT, the Court having jurisdiction thereof may award attorney's fees to the successful party.

[¶ 11] As with any contract, our objective in interpreting contractual fee-shifting provisions is to discern the intent of the contracting parties. *Cline*, 998 P.2d at 949; *DeWitt v. Balben*, 718 P.2d 854, 863 (Wyo. 1986). In discerning the meaning of a contract, our initial inquiry focuses on whether the language of the contract is clear or ambiguous. *Wolter v. Equitable Resources Energy Co.*, 979 P.2d 948, 951 (Wyo.1999); *Treemont, Inc. v. Hawley*, 886 P.2d 589, 592 (Wyo.1994). "Courts make that determination as a matter of law." *Wolter*, 979 P.2d at 951; *see also Svalina v. Split Rock Land & Cattle Co.*, 816 P.2d 878, 881 (Wyo.1991). This Court looks at the plain meaning of the words expressed within the four corners of a clear and unambiguous contract to determine the parties' intent. *Wolter*, 979 P.2d at 951.

[¶ 12] Under the plain language of the Garner Contract, the successful party in a suit, foreclosure, or other litigation arising out of any breach of the contract was entitled to request an award of attorney's fees. The Phelans' complaint alleged that Castleberry breached the Garner Contract by declaring it in default. Castleberry counterclaimed, alleging that she was entitled to have title to the property quieted to her because the Mordhorsts had breached the Garner Contract. The undisputed facts of the controversy showed that Castleberry followed the contractual requirements by declaring the contract in default and recording the quitclaim deed. The district court agreed with Castleberry's position and ruled that the Mordhorsts had defaulted on their obligations to make timely payments under the contract

and did not cure the default within thirty days. The litigation, therefore, fell within the ambit of the Garner Contract, and Castleberry was unquestionably the successful party in that litigation.[2]

[¶ 13] Despite its ruling that the litigation pertained to the Garner Contract, the district court concluded, without any citation to authority, that the attorney's fees provision did not survive the termination of the Garner contract. In support of the district court's determination, the Phelans direct us to cases involving contractual rescission. In *Pickinpaugh v. Morton*, 268 Or. 9, 519 P.2d 91 (1973) (en banc), the Oregon Supreme Court held that the plaintiffs were not entitled to attorney's fees under a contractual fee-shifting provision when they successfully sought rescission of the contract. *Id.* at 94. The Oregon Supreme Court noted that, when a contract is rescinded, the "terms of the abrogated contract have no influence whatever upon the subsequent determination of the rights of the parties...." *Id.* at 95. Therefore, the "plaintiffs' election to rescind the purchase agreement cancelled all of plaintiffs' contractual rights to the benefits of the contract, including an award of attorney's fees in the event of litigation." *Id.; see also Kennedy v. Gillam Development Corp.*, 80 P.3d 927, 930 (Colo.App.2003).

[¶ 14] There is, however, a critical distinction between the case at bar and cases such as *Pickinpaugh* and *Kennedy*. Unlike the parties in those cases, Castleberry did not seek rescission of the contract. Instead, she simply availed herself of the default remedies available under the contract. In this respect, the case at bar is more akin to a later Oregon Supreme Court case entitled *Usinger v. Campbell*, 280 Or. 751, 572 P.2d 1018 (1977). The *Usinger* case involved a suit for specific performance of an earnest money agreement. *Id.* at 1019. In that case, the plaintiffs had failed to make a payment in accordance with the parties' contract

and the defendant, consequently, refused to convey the property. *Id.* at 1020. The plaintiffs sought specific performance of the purchase contract, and the defendant was, therefore, required to defend by showing that the plaintiffs did not perform their contractual obligations. *Id.* at 1023. Since the defendant did not disaffirm the contract, but chose, instead, to rely on the terms of the contract, the Oregon Supreme Court ruled that the defendant was entitled to recover his attorneys' fees under the fee-shifting provision of the contract. *Id. See also Oral Roberts University v. Anderson*, 11 F.Supp.2d 1336 (N.D.Okla.1997) (holding that prevailing party was entitled to attorneys' fees under an option contract, which had expired prior to litigation, because the parties were litigating their performance under the terms of the contract); *Weter v. Archambault*, 313 Mont. 284, 61 P.3d 771 (2002) (holding that attorneys' fees were available to seller who elected to terminate a contract for deed in accordance with its default terms).

[¶ 15] Finally, the Phelans claim that, under the doctrine of election of remedies, Castleberry is not entitled to recover attorneys' fees. Specifically, the Phelans maintain that, because Castleberry elected to terminate the Garner Contract, she is precluded from claiming the alternative remedy of attorneys' fees. In support of their election of remedies argument, the Phelans direct us to several Wyoming cases for the rule that a party may not seek rescission of a contract and then subsequently claim a breach of contract. *See, e.g., Walters v. Michel*, 745 P.2d 913 (Wyo.1987); *Barquin v. Hall Oil Co.*, 28 Wyo. 164, 201 P. 352, 355 (1921). These cases are, of course, inapposite. As we have discussed at length, *infra*, Castleberry did not come to court requesting rescission of the Garner Contract. Castleberry simply appeared to defend the Phelans' claims that the Mordhorsts had not breached the contract.

---

**2.** Our holding in this case does not depart from prior cases in which we have stated that, "[e]ven in the face of a valid contractual provision for attorney's fees ... a trial court has the discretion to exercise its equitable control to allow only such sum as is reasonable or the court may properly disallow attorney's fees altogether on

the basis that such recovery would be inequitable." *Dewey*, ¶ 50. The district court's decision indicates that its decision was based upon a legal conclusion that attorneys' fees were not available. There is nothing in the decision to indicate that it was denying Castleberry attorneys' fees on the basis of equity. *Id.*

[¶ 16]   Reversed and remanded for further proceedings consistent with this decision.